[No. 8475–5–I.   Division One.   March 23, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT W. BOWER, *Appellant.*

*David Patterson,* for appellant (appointed counsel for appeal).

*Russ Juckett, Prosecuting Attorney,* and *Russell K. Jones, Deputy,* for respondent.

RINGOLD, J.—The defendant, Robert W. Bower, appeals a judgment and sentence entered upon his conviction at a jury trial of a violation of RCW 9.94.030, preventing a prison guard from performing his duties.[1] We hold that the trial court erred by not instructing the jury that knowledge was an element of the offense and by refusing Bower's request for a lesser included offense instruction.

On July 24, 1979, Terrance L. Heminger, a guard at the Washington State Reformatory, was operating a lock box during a 10–minute period in which inmates could move freely in and out of their cells before returning to their morning activities. At this time, according to Heminger's testimony, Bower physically attacked and choked him and complained about curtains being removed from his cell. Bower released his hold and Heminger ordered him to leave the cellblock. After Bower refused, Heminger locked the tier, left his post at the lock box and went to the officer's desk to write an infraction report. Heminger testified that he was fearful of another attack and, therefore, did not perform his duty to check all cells after closing the lock box. The purpose of the cell check was to ascertain that nobody was harmed and that each cell was locked and contained the proper inmate.

While Heminger was preparing his report, Bower approached him, grabbed the clipboard, ripped up several infraction report forms and threw the clipboard onto the floor. Bower then left the cellblock and Heminger finished his report.

The defense presented testimony by Bower, another inmate and a guard that tended to show a nonviolent confrontation and an overreaction by Heminger. Bower testified to a friendly light squeeze on Heminger's neck during a discussion about the curtains. Bower denied choking,

---

[1]RCW 9.94.030 states in part:

"Whenever any inmate of a state penal institution . . . shall prevent, or participate in preventing an officer of such institution from carrying out his duties, by force or violence, or the threat thereof, he shall be guilty of a felony . . ."

shoving and threatening him. Bower and another inmate testified that Heminger became angry and left to write an infraction report. The guard who testified for the defense could only recall observing an argument between Bower and Heminger. Concerning the incident with the infraction report, Bower testified that he removed the papers from the clipboard, tore them up, and told Heminger that he now had something to report.

## NECESSITY OF SCIENTER INSTRUCTION

Bower contends and the State concedes that RCW 9.94-.030 defines a mala in se crime that has "knowledge" or "intent" as an implied element because the legislature did not expressly eliminate scienter from the definition of the offense.[2] *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970); *State v. Minium,* 26 Wn. App. 840, 615 P.2d 511 (1980); *see also State v. Vanderveer,* 115 Wash. 184, 196 P. 650 (1921). The State, citing authority holding that the word "abet" includes "knowledge" within its ordinary meaning, argues that the instruction requiring proof of "force, violence or the threat thereof" adequately presented the element of "intent" to the jury. *State v. Gibson,* 79 Wn.2d 856, 490 P.2d 874 (1971). The State contends that the use of force, violence or threats thereof necessarily includes intent.

"Threat" was defined by the jury instructions in this case to include "intent", but the jury did not have to find a threat of force or violence to convict the defendant. The instructions permitted conviction upon a showing that Bower accidentally or carelessly used force that, without any intent or knowledge by Bower, prevented Heminger

---

[2]Bower also contends that the amended information does not charge a crime because it omits the element of knowledge or intent. The amended information employs the language in RCW 9.94.030. It is sufficient to charge the offense in the language of the statute if the statute defines the crime with reasonable certainty. *State v. Grant,* 89 Wn.2d 678, 575 P.2d 210 (1978). In light of the well established rule implying the requisite mental state as an element of the offense, the statute's omission of the mental element in the information is of no significance. It adequately apprised Bower of the charge against him.

from performing his duties. "Force" and "violence" are not defined in the instructions, and they do not include "knowledge" or "intent" in their ordinary meaning or when read in light of all other instructions.

■ *State v. Gibson, supra,* is distinguishable. The instruction in that case was in conjunctive form, requiring the jury to find aiding *and* abetting. Because "abet" had a common meaning that included guilty knowledge, the court held that the requisite scienter was before the jury. Here "threat" was defined to include the requisite mental state, but the disjunctive instruction was inadequate to inform the jury that the alternatives of force or violence had to be accompanied by the knowledge or intent that the conduct would prevent the performance of the guard's duties.

■ The parties do not specify the level of culpability required in the mental element of this offense. We believe the defendant must be aware of the result of his conduct before a conviction can be sustained under this statute. He, therefore, must act "knowingly"[3] as defined by RCW 9A.08.010(1)(b)(i). Bower's defense tended to show that he was not aware that his conduct would prevent the performance of Heminger's duties. Upon retrial, an instruction on "knowledge" must be given to the jury.

## SUFFICIENCY OF THE EVIDENCE

Bower contends that there was insufficient evidence to convict him of the charged offense. He views the testimony as showing nothing more than a momentary contact with Heminger that did not prevent the performance of any duties.

■ Bower ignores critical portions of the victim's testimony. There was evidence that Bower choked Heminger and created such fear in Heminger's mind that he could not perform a safety check after closing the lock box. A subsequent safety check would not have fulfilled Heminger's duty to protect the inmates immediately after closing the

---

[3]Proof of intent would be sufficient to prove knowledge. RCW 9A.08.010(2).

lock box. There was also evidence that the incident prevented Heminger from completing the full 10 minutes at the lock box. Had "knowledge" been submitted to the jury, Heminger's testimony would have been sufficient to support a finding of the existence of that mental element. Reviewing the evidence in the light most favorable to the State, we find it would be sufficient to convince a rational fact finder of the guilt of the accused beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

### LESSER INCLUDED OFFENSES

At trial, Bower submitted several requests for instructions on allegedly included offenses. The trial court refused these requests on the theory that the offense charged was specific and unique and was not subject to general offenses as lesser included crimes. On appeal, Bower contends the trial court erred by not instructing the jury on simple assault, malicious mischief and obstructing a public servant. The State responds that the prison statute is specific and supersedes the general crimes submitted by Bower. *State v. Cann,* 92 Wn.2d 193, 595 P.2d 912 (1979).

To obtain a lesser included offense instruction, two conditions must be satisfied. First, each element of the lesser offense must be a necessary element of the greater offense so that it is impossible to commit the greater offense without also committing the lesser offense. Second, the evidence in the case must support an inference that only the lesser offense was committed. RCW 10.61.006; *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978); *State v. Donofrio,* 141 Wash. 132, 250 P. 951 (1926); *State v. Livengood,* 14 Wn. App. 203, 540 P.2d 480 (1975).

Malicious mischief, RCW 9A.48.070–.090, does not satisfy the first condition. Malice and damage to property are elements of malicious mischief that are not included within the elements of the offense of preventing a prison guard from performing his duties. The trial court properly refused to submit malicious mischief to the jury.

Simple assault, RCW 9A.36.040, is also not a lesser

included offense in the usual sense of the term. The greater offense of preventing a prison guard from performing his duties can be committed by threatening force or violence against a person not present at the time of the threat. RCW 9A.04.110(25). Such a threat would not be an assault under our law. *See State v. Strand,* 20 Wn. App. 768, 582 P.2d 874 (1978).[4]

■ Obstructing a public servant, RCW 9A.76.020(3), is a necessarily included offense. The elements of this lesser offense are: (1) knowingly; (2) hindering, delaying or obstructing; (3) a public servant; (4) in the discharge of his official powers or duties. These elements are necessarily included within the greater offense of: (1) a prison inmate; (2) knowingly; (3) preventing; (4) a prison officer; (5) from carrying out his duties; (6) by force, violence or the threat thereof. RCW 9.94.030. It is impossible to violate RCW 9.94.030 without also violating RCW 9A.76.020(3). The second condition for obtaining an instruction is also satisfied in this case. Bower's defense supports a reasonable inference that his destruction of the infraction report forms knowingly delayed Heminger's preparation of a report but did not involve force, violence or threat thereof and did not prevent the guard from performing any duties.

The State does not dispute the foregoing analysis, but argues that the specific prison statute supersedes the general misdemeanor offense and bars its use in a prison case. The State relies on a line of authority involving offenses that differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct. *State v. Cann, supra* (misdemeanor criminal solicitation superseded by the felony of promoting prostitution); *State v. Walls,* 81 Wn.2d

---

[4]Force or violence are alternative means of committing the greater offense that necessarily include assault as a lesser offense. It would be reasonable to allow a lesser included offense instruction where some, but not all, means of committing a greater offense necessarily include the commission of a lesser offense. Because the parties have not focused on this issue in their briefing, we reserve this question for a case that squarely presents it for decision.

618, 503 P.2d 1068 (1972) (felony of grand larceny superseded by the misdemeanor of defrauding an innkeeper); *State v. Carroll,* 81 Wn.2d 95, 500 P.2d 115 (1972) (gross misdemeanor conspiracy superseded by the felony of conspiring against certain governmental units); *State v. Davis,* 48 Wn.2d 513, 294 P.2d 934 (1956) (felony kidnapping superseded by the felony of hostage taking by a prison inmate);[5] *State v. Becker,* 39 Wn.2d 94, 234 P.2d 897 (1951) (felony of grand larceny by false representations superseded by the misdemeanor of fraudulent procurement of old–age assistance); *State v. Langworthy,* 20 Wn. App. 822, 583 P.2d 1231 (1978), *rev'd on other grounds,* 92 Wn.2d 148, 594 P.2d 908 (1979) (misdemeanor conspiracy superseded by felony conspiracy involving controlled substances).

The question here and in the foregoing cases is one of legislative intent. In *Walls* and *Becker,* a specific misdemeanor superseded a general felony covering the same conduct. Without this construction, the statutes would have denied the equal protection of the law by giving the prosecutor an unlimited option to charge a felony or a misdemeanor for the same act committed under the same circumstances by people in like situations. If both statutes applied, there would be no legislative standard to use in determining which statute to charge. *See State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970); *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956). To avoid the same problem, specific felonies of conspiracy and solicitation were held to supersede the general conspiracy and solicitation statutes construed in *Cann, Carroll,* and *Langworthy.* This potential constitutional problem was also avoided in *Davis* where the superseded kidnapping statute provided a more severe punishment for the same conduct punished by the more specific hostage taking statute. Former RCW 9.52-

---

[5]The opinion in *State v. Davis,* 48 Wn.2d 513, 294 P.2d 934 (1956), also stated that if kidnapping were not a crime in the context of that case, there could be no conspiracy to kidnap.

.010(1), Laws of 1933, 1st Ex. Sess., ch. 6, § 1, p. 8 (repealed 1975); former RCW 9.94.030, Laws of 1955, ch. 241, § 3, p. 1008 (amended 1957); *see also State v. Sam,* 85 Wn.2d 713, 538 P.2d 1209 (1975); *State v. Ensminger,* 77 Wn.2d 535, 463 P.2d 612 (1970); *Walder v. Belnap,* 51 Wn.2d 99, 316 P.2d 119 (1957); *State v. Bailey,* 14 Wn. App. 748, 544 P.2d 778 (1976).

▮▮ The foregoing cases represent sound examples of courts adopting an interpretation of statutes that preserves their constitutionality. *Reilly v. State,* 18 Wn. App. 245, 566 P.2d 1283 (1977); *State v. White,* 14 Wn. App. 9, 538 P.2d 1235 (1975); *see State v. Lunstrum,* 19 Wn. App. 597, 576 P.2d 453 (1978). In this case, however, there is no potential constitutional problem. The prosecutor has legislative standards to use in determining which prison inmate should be charged under which statute because more facts have to be proved to convict an inmate of the greater felony offense. *State v. Wanrow,* 91 Wn.2d 301, 588 P.2d 1320 (1978); *State v. Burley,* 23 Wn. App. 881, 598 P.2d 428 (1979). When viewed in the prison context, the two statutes involve separate and distinct crimes. Under these circumstances the appropriate rule of statutory construction is one that gives effect to each statute. When two statutes concern the same subject matter and are not actually in conflict, they should ordinarily be interpreted to give meaning to each, even though one is specific in operation and the other is general. *State v. Krieg,* 7 Wn. App. 20, 497 P.2d 621 (1972).

Acceptance of the State's argument requires a conclusion that the legislature, by adopting a special felony statute, intended to decriminalize the lesser misdemeanor offense when it is committed by a prison inmate against a prison guard. In none of the aforementioned cases cited by the State was there any decriminalization of unlawful conduct.[6] Each case involved a more specific statute that preserved

---

[6]A conspiracy to commit the superseded offense would, however, necessarily be eliminated as a crime. *State v. Davis, supra;* see footnote 5.

the unlawfulness of the conduct. We are unable to discern any intent by the legislature to decriminalize the distinct lesser offense of obstructing a public servant when it occurs in prison. *See State v. Waldenburg,* 9 Wn. App. 529, 513 P.2d 577 (1973).

The State cites one case that had the effect of decriminalizing ordinary negligence in the context of a vehicular homicide. In *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960), the court held that manslaughter was superseded by negligent vehicular homicide. The conduct in the two offenses was not identical because the required negligence was greater in the vehicular homicide than in ordinary manslaughter. The distinction in *Collins* is that the court had before it express legislative history clearly revealing an intent to bar the State from pursuing a manslaughter charge in a vehicular homicide case. Absent clear evidence of an intent to decriminalize traditionally criminal conduct, we shall give effect to each statute to allow the prudent exercise of the prosecutorial charging discretion that takes into account the different proof requirements for each offense. *State v. Zornes, supra; State v. Krieg, supra.*

Reversed and remanded for a new trial.

WILLIAMS and CORBETT, JJ., concur.