[No. 29498-9-I. Division One. June 13, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL JOSEPH FISHER, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Theresa L. Fricke, Senior Prosecuting Attorney,* for respondent.

PEKELIS, A.C.J. — Michael Fisher (Fisher) appeals multiple issues arising from his convictions and sentence for delivery of cocaine and for possession with intent to deliver cocaine.

On March 14, 1991, Officer Michael Alphin (Alphin) and his partner, Seattle police officers and Anti-Crime Team (ACT) members, were participants in an undercover drug

buy/bust operation. Dressed in plain clothes and driving an unmarked vehicle, the officers were acting as drug buyers.

As they drove through the Columbia City area of Seattle, they encountered Larry Williams (Williams), who was walking down the street, and inquired about making a drug buy. Williams responded that he had a friend who sold drugs. Williams and Alphin met up with Williams' friend, Alonzo King (King), whom they informed of their desire to purchase cocaine. King then went into a nearby apartment building. Upon returning, King told Alphin and Williams that $40 worth of cocaine was available for sale inside. Alphin and Williams agreed that they would each purchase $20 worth of cocaine.

Alphin and Williams then followed King to a unit in the apartment building where they found Fisher and his girlfriend, Stonya Connor (Connor), lying together on a couch. As they entered the apartment through an open door, Fisher and Connor sat up. According to Alphin, Fisher then told Connor to go ahead and sell to them. Fisher denied making this statement. At that point, Connor opened her hand, revealing two small rocks of cocaine. Alphin purchased the larger rock from Connor with a marked $20 bill. After inspecting the smaller rock, Williams decided against purchasing it. According to Alphin, as he was leaving, he asked Fisher if he could come back to make another purchase later. Fisher replied affirmatively, stating that there would be more drugs later. Fisher denied making this statement.

When Alphin returned to the car, his partner signaled the arresting officers that a successful drug buy had been made. Approximately 30 seconds later, the arresting officers, who had not obtained an arrest or a search warrant, arrived at the apartment and found the door open. The officers entered with guns drawn and yelled: "[P]olice, you are under arrest". Connor and Fisher were then arrested and *Miranda*[1] warnings given. When Connor was questioned as to the whereabouts of the buy money, she responded that it was in her

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

bra. Fisher and Connor were then transported to the precinct where Connor was searched. The search revealed $80, which included the buy money, and a film canister containing one rock of cocaine. No drugs were found on Fisher.

Fisher was charged by amended information with two counts pursuant to RCW 69.50.401(a)(1) — as an accomplice to delivery of a controlled substance (count 1) and as an accomplice to possession with the intent to deliver a controlled substance (count 2). A school zone enhancement was added for each count.

The first trial resulted in a mistrial because the jury deadlocked. During the pretrial motions for the second trial, Judge Huggins stated that she would abide by the pretrial rulings issued in the first trial. Accordingly, the judge ruled that Fisher's prior felony violation of the Uniform Controlled Substances Act (VUCSA) conviction would be allowed for impeachment, stating:

> I would leave it to the discretion of the defense to decide whether to name the felony or not, but I think the court's ruling that a prior felony conviction can come into evidence will stand.

The next day the prosecutor asked for clarification about the evidentiary limitations placed on Fisher's prior conviction. Without objection, the court stood by "its original ruling that the felony will not be named", but stated that the punishment imposed for the VUCSA conviction would be allowed into evidence.

At trial, Alphin testified extensively about his training involving drugs and drug transactions. Specifically, Alphin testified that he had attended a 10-day ACT training focusing on narcotics, in addition to having attended three Federal Drug Enforcement Administration (DEA) schools. As a member of the south precinct ACT team, Alphin testified about his familiarity with street-level narcotics operations. In addition, he stated that he had participated in more than 150 buy/bust operations.

Without objection, Alphin testified as to the significance of Fisher's statement to Connor to go ahead and sell drugs to

Alphin, stating: "It indicated to me that he was involved in the transaction or he was the one running the show." Alphin then testified that this was something he was trained to look for during buy/bust operations.

Fisher also testified at trial. On direct examination, he testified that he had been convicted of a felony for which he was incarcerated, but did not name the felony. On cross examination, the prosecutor did not inquire about Fisher's prior felony conviction. Fisher admitted to using cocaine, but denied ever selling drugs. He testified that he did not know that Connor sold drugs prior to the sale to Alphin. He further testified that had he known of the drugs in Connor's possession the day of the arrest, he probably would have tried to use them himself. Fisher denied ever selling drugs or discussing drugs with Alphin.

Robin Bussoletti, a forensic scientist at the Washington State Crime Lab, testified that both rocks involved in the case were cocaine.

Fisher was convicted as charged. At sentencing, the court rejected Fisher's argument that the two counts involved the same criminal conduct. Fisher received a 65-month standard range sentence for each count to be served concurrently.

Fisher appeals.

## I

### WARRANTLESS ENTRY TO ARREST IN DWELLING

As an initial matter, we reject Fisher's contention that he be allowed to challenge for the first time on appeal the warrantless entry into a dwelling to arrest because it is a "manifest error affecting a constitutional right". RAP 2.5(a)(3).

Although admission of evidence obtained in violation of the federal or state constitution is an error of constitutional magnitude, the failure to move for suppression of such evidence constitutes a waiver of the right to have it suppressed. *State v. Mierz*, 72 Wn. App. 783, 789, 866 P.2d 65 (1994); *State v. Tarica*, 59 Wn. App. 368, 373, 798 P.2d 296 (1990).

Accordingly, by failing to seek suppression of the evidence found on Connor following the warrantless entry to arrest,

Fisher waived the right to have it suppressed as having been obtained in violation of article 1, section 7 of the Washington Constitution.[2]

Fisher alternatively contends that counsel was ineffective in failing to bring a pretrial motion to suppress.[3] In deciding this issue, we follow the analysis set forth in *Tarica*, 59 Wn. App. at 373-78, in which this court addressed whether the failure to move for suppression of illegally obtained evidence constituted ineffective assistance of counsel.

■ To prevail on an ineffective assistance of counsel claim, the defendant must satisfy two elements. *Tarica*, 59 Wn. App. at 373-74 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). First, the defendant must show that counsel's performance was deficient. *Tarica*, at 373-74. Second, the defendant must show that counsel's deficient performance resulted in prejudice, *i.e.*, "counsel's errors were so egregious that the defendant was deprived of a fair trial". *Tarica*, at 374.

■ In *Tarica*, at 374, the court determined that because such motions are made outside the presence of the jury, there could be no tactical reason for counsel's failure to bring a motion to suppress evidence. As a result, the court held that counsel's performance was per se deficient.[4] *See also Mierz*, 72 Wn. App. at 790; *State v. McFarland*, 73 Wn. App. 57, 73, 867 P.2d 660 (1994).

---

[2]Fisher specifically addresses his argument to article 1, section 7 of the Washington Constitution, which provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Washington's constitution provides greater protection against warrantless searches and seizures than the fourth amendment to the United States Constitution. *State v. Myers*, 117 Wn.2d 332, 337, 815 P.2d 761 (1991).

[3]This argument is only relevant to count 2, which was based primarily on the rock of cocaine found on Connor. In contrast, there was sufficient evidence independent of the buy money found on Connor to prove count 1.

[4]We are aware of contrary federal authority in *Kimmelman v. Morrison*, 477 U.S. 365, 380, 91 L. Ed. 2d 305, 106 S. Ct. 2574, 2587 (1986) (the failure to file a suppression motion is not per se deficient performance). We need not resolve this apparent conflict, however, because other than sheer speculation, the State has failed to identify any tactical reason for defense counsel's failure to bring a suppression motion in this case.

Based on *Tarica*, it is clear that Fisher's counsel was deficient in failing to seek suppression of evidence seized as a result of the warrantless entry to arrest. However, in order to decide whether counsel's deficient performance prejudiced Fisher, we must determine whether a motion to suppress would have been granted had it been made. *Tarica*, at 374.

This we are unable to determine from the record. Although the State contends that four exigencies justified the warrantless entry, the record neither proves nor disproves this contention. This is not surprising because the propriety of the warrantless entry was never raised below. As a result, we must decide the appropriate remedy under these circumstances.

Washington courts have not applied a uniform remedy when counsel has failed to bring a suppression motion. On the one hand, this court in *Tarica* reversed and ordered a new trial following its determination that a motion to suppress would likely have been granted. *Tarica*, at 378. On the other hand, in *McFarland*, 73 Wn. App. at 73, Division Two of the court held that because it could not determine from the record whether a motion to suppress would have been granted, "the only remedy is to bring an independent proceeding by way of personal restraint petition under RAP 16.3.'" *McFarland*, at 74 (quoting *State v. King*, 24 Wn. App. 495, 505, 601 P.2d 982 (1979)).

Although the *McFarland* court did not explicate its holding, it cited *King*, at 504-05 which, in turn, cited *State v. Humburgs*, 3 Wn. App. 31, 472 P.2d 416 (1970) and *State v. White*, 81 Wn.2d 223, 500 P.2d 1242 (1972). However, in each of these cases, the ineffective assistance of counsel claims were based on what were arguably tactical decisions by counsel, and, therefore, could not be deemed deficient in the absence of a fully developed record. Accordingly, the appropriate remedy was held to be a collateral attack by way of habeas corpus.

■ In contrast, the ineffective assistance of counsel claims presented here, as in *Tarica* and *McFarland*, are based on the failure to seek suppression of evidence, which consti-

tutes deficient performance per se. *See Tarica,* at 374. This distinction is significant because the only remaining issue is whether prejudice resulted from counsel's deficiency. Thus, we conclude that the matter can best be resolved by simply remanding for a suppression hearing, the result of which will only impact count 2. If the motion to suppress is granted, the State will likely be compelled to dismiss. If the State prevails, Fisher retains the right to appeal the trial court's decision.

## II

### UNNAMED FELONY CONVICTION

Fisher next challenges the trial court's ruling that he could be impeached by an unnamed felony conviction, arguing that prohibiting him from naming the felony violated his constitutional right to testify and present evidence on his own behalf.

We reject this contention. The trial court specifically ruled that the decision to name the felony would be left to the *Defendant's discretion.* Although Fisher contends that the court modified this ruling the next day to prohibit *any* naming of the felony, this contention is not borne out by the record. Rather, upon the prosecutor's request, the court merely clarified the information that *the prosecutor* would be allowed to elicit about the felony. Without objection, the court stated that the felony could not be named, but that the punishment imposed would be allowed into evidence. This clarification is consistent with the court's ruling that *the Defendant* would have the choice of naming the felony. In fact, Fisher chose to testify about the felony conviction, but not to name it, while the prosecutor never mentioned the conviction during cross examination. Because the trial court did not prohibit any naming of the felony, but left the decision to Fisher's discretion, the alleged error simply did not occur.

## III

### OPINION TESTIMONY ABOUT THE DEFENDANTS GUILT

Fisher contends that the trial court erred in admitting Alphin's testimony that Fisher's statement to Connor to go

ahead and sell drugs to Alphin indicated that Fisher was "involved in the transaction or he was the one running the show". Fisher argues that Alphin's statement constituted an impermissible opinion as to his guilt as an accomplice. We disagree.

Under ER 704, opinion testimony is not required to be excluded merely because it encompasses an ultimate issue of fact to be decided by the factfinder.[5] *Seattle v. Heatley*, 70 Wn. App. 573, 578-79, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994); *State v. Sanders*, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992). However, no witness, lay or expert, is allowed to " 'testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.' " *Heatley*, 70 Wn. App. at 577 (quoting *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). It is often said that such testimony is unfairly prejudicial because it invades the trier of fact's province to independently evaluate the facts. *Heatley*, at 577; *Sanders*, 66 Wn. App. at 387. Furthermore, an opinion as to the defendant's guilt is particularly prejudicial when made by a law enforcement official. *Sanders*, at 387.

In *Heatley*, at 579, this court held that the determination of whether testimony constitutes an impermissible opinion as to the defendant's guilt:

> will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *See generally Sanders*. The trial court must be accorded broad discretion to determine the admissibility of ultimate issue testimony, [*State v.*] *Jones*, 59 Wn. App. [744, 751, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991)] and this court has expressly declined to take an expansive view of claims that testimony constitutes an opinion on guilt.

Courts have held that evidence does not constitute improper opinion testimony when the testimony is not a direct comment on the defendant's guilt or on a witness's veracity, is helpful to the jury, and is based on inferences

---

[5]The testimony must nevertheless conform to the requirements of ER 403, ER 701, and ER 702. *Heatley*, at 579; *see also State v. Jones*, 59 Wn. App. 744, 750 n.2, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991).

from the evidence. *Heatley*, at 577-80 (holding that the officer's testimony that the defendant was " 'obviously intoxicated' " and " 'could not drive a motor vehicle in a safe manner . . .' " did not constitute an opinion about the defendant's guilt on a DWI charge because the opinion was based solely on his experience and his observation of Heatley's physical appearance and performance on field sobriety tests); *see also Sanders*, 66 Wn. App. at 388-89; *State v. Jones*, 59 Wn. App. 744, 749-51, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991).

In this case, although Alphin's testimony encompassed the ultimate factual issue as to whether Fisher acted as an accomplice to the delivery and to possession with the intent to deliver, Alphin did not express a direct opinion as to Fisher's guilt or his credibility. Alphin's opinion that Fisher's statement during the transaction indicated that he was "involved in the transaction" or "running the show" was an inference drawn, not only from his experience with street-level drug sales, but from having personally heard Fisher's statement and observed his behavior. Here, even without expert testimony about drug transactions, this inference is one that would be drawn by any reasonable person. We therefore find that Alphin's testimony did not constitute an impermissible opinion as to Fisher's guilt.[6]

In light of this conclusion, we need not decide whether Fisher waived the right to challenge Alphin's testimony by failing to object at trial, *see Heatley*, 70 Wn. App. at 583, or Fisher's alternative contention that, if Fisher waived the right to object to Alphin's testimony, counsel was ineffective for failing to object to the testimony.

---

[6]Fisher attempts to rely on Washington case law holding that profile testimony is inadmissible as unduly prejudicial when it does nothing more than identify the defendant as a member of a group more likely to commit a crime. *See, e.g., State v. Braham*, 67 Wn. App. 930, 841 P.2d 785 (1992). In the profile testimony cases, an expert testified as to some characteristic of the defendant or circumstance present in the case that indicated a likelihood that the defendant committed the charged crime. In contrast, Alphin's opinion was based on having personally heard Fisher's statement and personally observed his behavior. His drug training merely buttressed the logical conclusion from Fisher's statement to go ahead and make the sale — that Fisher was somehow involved in the transaction.

## IV

### SUFFICIENCY OF THE EVIDENCE

Fisher next contends that the evidence was insufficient to support his conviction as to count 2 — accomplice to possession of cocaine with intent to deliver under RCW 69.50.401(a).[7] Specifically, Fisher argues that because there was no evidence demonstrating that he had an ongoing possessory interest in the unsold rock of cocaine, it was mere speculation to infer from his statement that Connor should go ahead and make the sale to Alphin that he intended to deliver the unsold rock.

■ On review, we must view the evidence in the light most favorable to the State and determine whether it is sufficient to convince a rational trier of fact of all of the elements of the crime beyond a reasonable doubt. *State v. Bower*, 28 Wn. App. 704, 709, 626 P.2d 39 (1981). By challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980).

■ " 'Circumstantial evidence is no less reliable than direct evidence; specific criminal intent may be inferred from circumstances as a matter of logical probability.' " *State v. Brown*, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993) (quoting *State v. Zamora*, 63 Wn. App. 220, 223, 817 P.2d 880 (1991)).

■ *State v. Galisia*, 63 Wn. App. 833, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992) is controlling on this issue. In *Galisia*, at 839-41, this court rejected the same argument presented here — that the evidence was insufficient to support the defendant's conviction as an accomplice to possession with intent to deliver cocaine because there was no evidence that he actually possessed cocaine.

Accomplice liability in Washington is premised on the notion that a defendant need not participate in each element of the

---

[7]Although our resolution of this issue will likely be immaterial if the motion to suppress is granted, we address it now, not only because the motion may be denied, but because if Fisher is correct there would be no need for us to remand on count 2.

crime, nor need he share the same mental state that is required of the principal. Rather, it is the intent to facilitate another in the commission of a crime by providing assistance through his presence or his act that makes the accomplice criminally liable.

(Citations omitted.) *Galisia*, at 840. However, physical presence and awareness of the transaction alone is not enough to establish accomplice liability. *Galisia*, at 839.

Thus, the absence of evidence indicating that Fisher physically possessed the cocaine is not dispositive. Rather, the proper inquiry is whether Fisher, by his presence or actions, intended to facilitate the attempted sale to Williams. Viewing the evidence in the light most favorable to the State, it would certainly be reasonable for the trier of fact to infer from Fisher's statement to Connor to go ahead and make the sale that he also intended to facilitate the sale of the second cocaine rock, which Williams rejected. We therefore find that the evidence was sufficient to support Fisher's conviction for an accomplice to possession with the intent to deliver cocaine.

## V

### Jury Instructions and Double Jeopardy

We next address Fisher's contention that the "to convict" jury instruction for possession with intent to deliver was inadequate to ensure that he was not subjected to double jeopardy by being punished twice for the same conduct.[8]

---

[8]The jury was instructed: "To convict the defendant Michael Joseph Fisher of the crime of possession with intent to deliver a controlled substance, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 14th day of March, 1991, the defendant or a person to whom the defendant was an accomplice possessed with intent to deliver a controlled substance;

"(2) That the defendant knew it was a controlled substance; and

"(3) That the acts occurred in King County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count II.

"On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count II."

Fisher relies on *State v. Garcia*, 65 Wn. App. 681, 829 P.2d 241, *review denied*, 120 Wn.2d 1003 (1992), which was decided after the judgment and sentence were entered against him, and argues that because the "to convict" instruction for count 2, possession with intent to deliver, did not specify that the charge was based on the rock of cocaine remaining after the sale to Alphin, the jury could have convicted him based on his possession of the rock which preceded the actual delivery to Alphin, which was an element of, and merged with, count 1.

In *Garcia*, Garcia was charged with one count of delivery of a controlled substance to Rutherford, although the amended information erroneously charged the delivery to Officer Trebesh. Garcia was also charged with one count of possession with intent to deliver, which was based on drugs found pursuant to a search incident to arrest following the delivery to Rutherford. During deliberations, the jury asked the court "Does intent to deliver a controlled substance pertain to the alleged delivery of a controlled substance to Mr. Rutherford?" *Garcia*, at 685.

On appeal, Garcia argued that the jury instructions violated the prohibition against double jeopardy because there were two instances that the jury could have relied on to convict him of possession with intent to deliver — one instance involving his "intent to deliver" preceding the delivery, which merged with the delivery charge, and the other instance involving his "intent to deliver" drugs remaining after the delivery. Because the jury's inquiry indicated confusion as to which act the State was relying upon to establish his intent to deliver, this court held that where there is evidence of two instances in which the jury could have found the intent to deliver, one of which violates appellant's right to be free from double jeopardy, it is reversible error for the court not to instruct the jury "in such a manner as to distinguish the merged charge from the validly charged criminal act." *Garcia*, at 691.

█ We do not read *Garcia* as requiring a specific instruction detailing the act or acts which form the basis for each

count when there is no evidence of jury confusion as to the factual basis for each count. Instead, the risk of double jeopardy is eliminated where separate crimes are charged, evidence is presented on each charge, and the argument of counsel clearly identifies the acts corresponding to each charge. *See State v. McFadden*, 63 Wn. App. 441, 451, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992).

Accordingly, Fisher's right to be free from double jeopardy was not violated under the circumstances presented here. In contrast to *Garcia*, there was no confusion as to which acts supported count 2, possession with intent to deliver. At closing argument, the prosecutor clearly distinguished between: (1) the delivery charge as it related to the sale to Alphin and (2) the possession with intent to deliver charge as it related to rock of cocaine, which remained after the sale to Alphin and which Williams declined to purchase. Therefore, we are satisfied that there was no risk that the jury convicted Fisher of possession with intent to deliver based on his "intent to deliver" preceding the delivery to Alphin.

## VI

### MERGER/SAME CRIMINAL CONDUCT

We briefly address Fisher's remaining contentions that his two convictions merged and that they encompass the same criminal conduct.

Fisher first argues that his convictions should be found merged because the possession with intent to deliver charge could be characterized as an attempt to transfer cocaine to Williams, which occurred at the same time that he completed a delivery to Alphin. As support, Fisher relies on former RCW 69.50.101(f), which defined "delivery" to include "the actual . . . or *attempted* transfer" of a controlled substance.

The merger doctrine prohibits the "prosecution and punishment for an offense which the Legislature has clearly intended is not to be punished separately from the greater offense." *Garcia*, 65 Wn. App. at 689. However, the merger doctrine does not apply where one crime involves a separate

and distinct injury from that of the other. *Garcia,* at 690. Delivery of a controlled substance and possession with intent to deliver are distinct and separately punishable "if the possession with intent to deliver charge is predicated upon the presence of controlled substances after the actual delivery at issue is made." *Garcia,* at 690.

In this case, it is clear that the possession with intent to deliver charge was based on the rock of cocaine remaining after the actual delivery and therefore the two counts do not merge. As the State correctly points out, the fact that Fisher attempted to sell the rock to Williams creates the factual basis for count 2. Therefore, the counts do not merge.

Finally, Fisher contends that the trial court abused its discretion in finding that the offenses did not encompass the same criminal conduct under RCW 9.94A.400(1)(a) and thus we should remand for a recalculation of the offender score.

■ In this case, because the two counts occurred contemporaneously and involved the same victim, *i.e.,* the public at large, *see State v. Garza-Villarreal,* 123 Wn.2d 42, 47, 864 P.2d 1378 (1993), the only issue is whether Fisher's criminal intent, objectively viewed, was the same for the delivery charge, which was based on his sale to Alphin, and for the possession with intent to deliver charge, which was based on rock of cocaine remaining after the delivery to Alphin that Williams rejected.

Fisher's contention has been rejected by the Washington Supreme Court in *State v. Burns,* 114 Wn.2d 314, 318-20, 788 P.2d 531 (1990). In *Burns,* the court held that a conviction for delivery of a controlled substance based on a sale to an individual and possession with intent to deliver based on cocaine remaining after the delivery do not constitute the same criminal conduct because they involve different criminal intents — an intent to deliver drugs in the present versus an intent to deliver in the future.

Applying *Burns* here, Fisher's conviction for delivery, which evidenced an objective criminal intent to deliver in the present, is a separate crime from his conviction for possession with intent to deliver, which evidenced an objective

 820

criminal intent to deliver in the future. Thus, the trial court did not err in concluding that the offenses do not encompass the same criminal conduct.

We affirm the conviction as to count 1. We reverse and remand on count 2 for a suppression hearing consistent with this opinion.

AGID, J., concurs.

BAKER, J. (concurring) — I concur in the result and with the majority's analysis, except as to section III. As to that section, which deals with the issue of opinion testimony about the Defendant's guilt, I would conclude that the error, if any, was harmless.

After modification, further reconsideration denied July 13, 1994.

Review granted at 124 Wn. 2d 1024 (1994).