[No. 33631-2-I.    Division One.    October 24, 1994.]

THE CITY OF SEATTLE, *Respondent*, v.
KRISTEN SCHURR, *Petitioner*.

*Neil Fox* of *The Defender Association*, for petitioner.

*Mark H. Sidran, City Attorney*, and *Andrea Chin, Assistant*, for respondent.

PEKELIS, C.J. — Kristen Schurr (Schurr) appeals from the Superior Court's affirmance of her criminal impersonation conviction. She contends that the conviction is not supported by sufficient evidence.

The events leading up to Schurr's criminal impersonation conviction began in May 1992, when Paula Gray (Gray), a Nordstrom security agent, noticed Schurr in the Northgate Nordstrom. Suspicious of Schurr, Gray followed her as she walked through the store. She watched while Schurr returned a clothing item for a cash refund. A Nordstrom price ticket was attached to the merchandise. As Gray watched, Schurr completed a return document given to her by the salesclerk. Schurr then presented some sort of Washington State identification. The salesclerk then transcribed the number and address from the identification on the return document. When the return document was complete, the salesclerk gave Schurr $103 in cash.

Gray continued to follow Schurr through the store. Gray saw Schurr take five suits into a dressing room along with an empty shopping bag. When Schurr exited the dressing room, the shopping bag was full. Gray then searched the dressing room; she found four suits and one hanger. Gray followed Schurr as she quickly exited the store and drove away in a vehicle that had been waiting outside.

Gray immediately returned to the department from which Schurr had received the cash refund. She retrieved the refund document and discovered that Schurr had signed her name as Melanie McLain, which was the name on the identification that Schurr had presented.

Gray continued her investigation by telephoning Melanie McLain (McLain). From their conversation and from Gray's description of Schurr, McLain brought in a photograph of Schurr. Gray identified Schurr as the person who had signed Melanie McLain's name on the return document.

The City of Seattle (the City) charged Schurr with one count of theft and one count of criminal impersonation. Schurr filed a pretrial petition for a deferred prosecution under RCW 10.05, which the municipal court judge denied.

At trial, Gray testified that Nordstrom requires the presentation of identification whenever an item is returned for cash. McLain testified that she and Schurr's sister, Melissa, were friends. McLain explained that she had lent her iden-

tification to Melissa so that Melissa could get into clubs because she was not of legal age. McLain testified that she had not given Schurr permission to use her identification.

The jury convicted Schurr of one count of criminal impersonation. However, the jury deadlocked on the theft charge and it was subsequently dismissed.

Schurr appealed her criminal impersonation conviction to the King County Superior Court, arguing that the evidence was insufficient to sustain the conviction and that the trial court erred in denying the deferred prosecution. The court affirmed the conviction. Schurr then sought discretionary review in this court, which was granted.

We first address Schurr's contention that the evidence was insufficient to sustain her criminal impersonation conviction. If she prevails on this claim, we will not need to reach Schurr's contention that her Petition for Deferred Prosecution was erroneously denied.

■ On review, we "must view the evidence in the light most favorable to the [City] and determine whether it is sufficient to convince a rational trier of fact of all of the elements of the crime beyond a reasonable doubt". *State v. Fisher*, 74 Wn. App. 804, 815, 874 P.2d 1381 (1994). When a defendant challenges the sufficiency of the evidence, he or she admits the truth of the City's evidence and all inferences reasonably drawn therefrom. *Fisher*, at 815.

As charged in this case, criminal impersonation requires proof of three elements: (1) the assumption of a false identity; (2) the commission of an act while assuming a false identity; and (3) the "intent to defraud another". Seattle Municipal Code (SMC) 12A.08.130(B)(1). SMC 12A.08.130(A) provides:

> As used in this section, "intent to defraud" means the use of deception in Section 12A.08.050 B *with the intention to injure another's interest which has economic value.*

(Italics ours.) SMC 12A.08.050(B), which sets forth six ways for "[d]eception" to occur, concludes "[t]he term 'deception' does not include falsity as to matters *having no pecuniary significance.*" (Italics ours.)

■ Schurr contends that the use of another's identification to return merchandise for a cash refund is, by itself,

insufficient proof of the "intent to defraud". We agree.[1] The City is unable to point to any identifiable economic interest that would be injured by the assumption of a false identity to return merchandise. Specifically, we are unable to discern *whose* interest and the *nature* of the interest that might be injured by such action. This is particularly true because: (1) there was no evidence that the returned merchandise was stolen or was not rightfully in Schurr's possession and (2) Nordstrom received its own merchandise in exchange for the $103 it refunded Schurr.

The City, however, attempts to persuade us of two possible economic interests that would be harmed by Schurr's assumption of a false identity to return legitimate merchandise for cash. First, the City argues that it can be reasonably inferred that Nordstrom loses profit when merchandise is returned for cash. Because lost profits implicate Nordstrom's economic interests, the City asks us to infer that Schurr's having assumed a false identity to return legitimate merchandise for a cash refund evidences an intent to deprive Nordstrom of profit.

We reject this argument. Even assuming that Nordstrom loses profit on cash returns, the City ignores the fact that *whenever* merchandise is returned for cash, regardless of whether false identification is presented or not, Nordstrom would lose profit. Certainly, "to injure another's interest which has economic value" means more than merely returning the retailer to its original position. Accordingly, the fact that Schurr assumed a false identity to return merchandise for cash is, by itself, insufficient to prove she acted with the intent to defraud.

Second, the City argues that it can be inferred from the fact that Nordstrom has a policy requiring that identification be presented in order to receive a cash refund that

---

[1] We do not, however, accept Schurr's suggestion that the "intent to defraud" requires proof of some *actual* economic loss. Although proof of actual economic loss indeed would be one means of establishing this element, the ordinance clearly states that the City need prove only that the defendant, by the use of deception, *intended* to injure another's economic interests, not that the defendant actually injured another's economic interests.

Nordstrom has some economic interest in refunding the cash to the person whose identity was falsely assumed.

The problem with this "inference" is that it requires us to make a leap unsupported by any evidence. The record is devoid of any facts showing the purpose of Nordstrom's identification policy. It is pure speculation that Nordstrom has some economic interest in ensuring that the person whose identity is falsely assumed receive the refunded cash. Consequently, we refuse to infer from the *mere existence* of Nordstrom's policy that a person who presents false identification to return legitimate merchandise for a cash refund did so with the intent to defraud.

This would be a different case if the record indicated that Schurr's presentation of false identification was part of a larger scheme to defraud Nordstrom. However, in this case, the jury did not convict Schurr of the theft charge, and there was no other basis from which one could infer that the use of false identification was intended "to injure another's interest which has economic value".

In sum, the City has failed to identify any plausible economic interest that would be injured by the assumption of a false identity to return merchandise. Therefore, we conclude that no rational trier of fact could find that Schurr acted with the intent to defraud.

Because we reverse the conviction for lack of sufficient evidence, we do not address Schurr's alternative contention that the trial court erred in denying her Petition for Deferred Prosecution under RCW 10.05.

Reversed.

SCHOLFIELD and KENNEDY, JJ., concur.