2014 APR 28 AH 10: 26


## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF KENT, | ) | No. 69401-4-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| EVERARDO BECERRA-AREVALO, | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: April 28, 2014 |
| | ) | |

Cox, J. — We granted discretionary review of the superior court's RALJ order reversing the conviction of Everardo Becerra-Arevalo for assault in the fourth degree with sexual motivation. The superior court ruled that the prosecutor committed misconduct by eliciting testimony on Becerra-Arevalo's credibility and by commenting on Becerra-Arevalo's exercise of his constitutional right to confront witnesses against him. Because Becerra-Arevalo fails to establish that the statements, to which he failed to object below, were improper and prejudicial, we reverse the superior court's order and reinstate Becerra-Arevalo's conviction.

On October 27, 2009, Becerra-Arevalo put his hands on Kelly Fitzpatrick's breasts and attempted to kiss her at her place of employment. Fitzpatrick reported the incident to the police. Thurston County Deputy Carrie Nastansky responded to Fitzpatrick's report and investigated the allegation.

The City of Kent charged Becerra-Arevalo with assault in the fourth degree with sexual motivation.

At trial, the City presented the testimony of Kelly Fitzpatrick, Deputy Nastansky, and Teresa Plemmons-Hutchens, Becerra-Arevalo's supervisor. Becerra-Arevalo also testified.   We describe this testimony in more detail later in this opinion.

The jury convicted Becerra-Arevalo of assault in the fourth degree with sexual motivation.

He filed a RALJ appeal in superior court asserting, among other claims, that the City committed prosecutorial misconduct by eliciting improper opinion testimony from Deputy Nastansky and by commenting on Becerra-Arevalo's constitutional right to confront a witness against him.  The superior court reversed Becerra-Arevalo's conviction on these grounds, concluding that:

> [T]he cumulative effect of the combination of the police officer's comment on the credibility of the defendant and the emphasis by both counsel on lying during the officer's testimony with the comment on the defendant's presence during the witness's testimony when he had a constitutional right to be there require reversal and remand for retrial.[1]

The superior court declined to address the additional issues Becerra-Arevalo raised on appeal.

We granted the City's motion for discretionary review.

---

[1] Clerk's Papers at 459-60.

## PROSECUTORIAL MISCONDUCT

The City asserts that the superior court erred by concluding that the prosecutor committed misconduct. We agree.

A defendant claiming prosecutorial misconduct bears the burden of demonstrating that the challenged conduct was both improper and resulted in prejudice.[2] We review alleged misconduct "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[3]

## IMPROPER CONDUCT

Becerra-Arevalo contends, as he did on RALJ appeal, that several incidents of misconduct deprived him of a fair trial. He first argues that the prosecutor elicited impermissible opinion testimony on his credibility. He is mistaken.

On direct examination, Deputy Nastansky described her initial contact with Becerra-Arevalo, which occurred on November 12, 2009. Deputy Nastansky testified that her conversation with Becerra-Arevalo "was kind of odd because it was – I don't want to say he was trying to hide something. He was very careful about what he said and how he answered the questions."[4] The following exchange then occurred:

---

[2] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).
[3] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).
[4] Clerk's Papers at 110.

| | |
|---|---|
| [Prosecutor]: | **Why did you have that opinion [that Becerra-Arevalo was being careful in answering your questions]?** |
| [Deputy Nastansky]: | Because he was slow to answer as if he were trying to come up with a story in his head versus just if something had happened you would be able to freely tell the story and you wouldn't have to think about it. You just say what happened, nothing to hide. |
| [Prosecutor]: | And did you get that perception with him here? |
| [Deputy Nastansky]: | No. **He was – it seemed to me like he was trying to hide something.**[5] |

Generally, no witness may offer an opinion regarding the defendant's guilt or veracity.[6] A police officer's testimony on the veracity of another witness raises additional concerns because "an officer's testimony often carries a special aura of reliability."[7] However, testimony that is not a direct comment on the defendant's guilt or veracity, is helpful to the jury, and is based on inferences that is not improper opinion testimony.[8]

Deputy Nastansky's initial statements do not amount to improper opinion testimony. Rather, they were based on her observations of Becerra-Arevalo's

---

[5] Clerk's Papers at 111 (emphasis added).
[6] State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); State v. Rafay, 168 Wn. App. 734, 805, 285 P.3d 83 (2012), review denied, 176 Wn.2d 1023 (2013).
[7] Kirkman, 159 Wn.2d at 928.
[8] State v. Fisher, 74 Wn. App. 804, 813-14, 874 P.2d 1381 (1994) (aff'd in part, rev'd in part sub nom., State v. McFarland, 127 Wn.2d 322, 899 P.2d 1251 (1995)).

demeanor when she confronted him about the allegation against him. Although her statements may imply or suggest culpability, they were not direct comments on Becerra-Arevalo's guilt.

Nor was Deputy Nastansky's subsequent testimony improper. The statements were invited by defense counsel's line of questioning.

On cross-examination, Becerra-Arevalo's defense counsel inquired, "And you said his answers were guarded? As far as you were aware did you know if Mr. Becerra was aware of the claims that had been made against him?" and, "The answers that were guarded as far as giving a slow answer to was in response to his relationships with other females?"[9]

During redirect examination, the prosecutor followed up on defense counsel's questions concerning whether Becerra-Arevalo appeared "guarded":

| [Prosecutor]: | Was [Becerra-Arevalo] also guarded with you on the events that occurred on October 27th? |
|---|---|
| [Deputy Nastansky]: | Yes he was. **And he lied to me also.** He told me he didn't know why I was there, although he had already been contacted by the property manager, so you would assume that he would know why I was there.[10] |

---

[9] Clerk's Papers at 117.
[10] Clerk's Papers at 120 (emphasis added).

Then, on recross-examination, defense counsel posed numerous questions regarding Deputy Nastansky's belief that Becerra-Arevalo lied to her and appeared guarded, including the following:

| | |
|---|---|
| [Defense Counsel]: | You said he lied to you? That's a pretty bold statement by an officer, wouldn't you agree?[11] |
| [Defense Counsel]: | And you said that the reason you thought it was a lie was because this other person had talked to him previously?[12] |
| [Defense Counsel]: | You go from the perspective that someone's guilty of a crime. What about somebody that doesn't think they've committed a crime?[13] |
| [Defense Counsel]: | You classify this as a lie. You specifically said it was a lie.[14] |
| [Defense Counsel]: | So what about that statement is a lie?[15] |
| [Defense Counsel]: | If you were accused of a crime – most people that you deal with, when you accuse them of a crime, are they guarded?[16] |
| [Defense Counsel]: | So you're saying just the people that are guilty are guarded?[17] |

---

[11] Clerk's Papers at 122.
[12] Id.
[13] Id.
[14] Clerk's Papers at 124.
[15] Id.
[16] Clerk's Papers at 125.
[17] Id.

[Defense Counsel]:     And that's the statement that you're saying is a lie?[18]

On second redirect examination, the prosecutor asked Deputy Nastansky additional questions about her conclusion that Becerra-Arevalo lied to her.

A prosecutor's remarks do not constitute misconduct if they are invited by defense counsel or are in reply to defense counsel's acts unless they "'go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them.'"[19]

Here, Deputy Nastansky testified on redirect and second redirect examination concerning her belief that Becerra-Arevalo lied to her. But Becerra-Arevalo's defense counsel opened the door to this line of questioning. As detailed above, on cross-examination, defense counsel posed questions about Becerra-Arevalo appearing "guarded." Subsequently, on re-cross examination, defense counsel relentlessly inquired about Deputy Nastansky's stated belief that Becerra-Arevalo lied to her and appeared guarded. The prosecutor's questions on redirect and second redirect examination were a direct and pertinent response to defense counsel's series of questions.

Moreover, the prosecutor cannot be assigned fault for Deputy Nastansky's declaration that Becerra-Arevalo had "lied to me also." Statements in response to a prosecutor's questioning when not elicited by the prosecutor are not

---

[18] Clerk's Papers at 126.
[19] State v. Dennison, 72 Wn.2d 842, 849, 435 P.2d 526 (1967) (quoting State v. LaPorte, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)); State v. Jones, 144 Wn. App. 284, 299, 183 P.3d 307 (2008).

characterized as prosecutorial misconduct.[20] Deputy Nastansky volunteered her opinion that Becerra-Arevalo had lied to her. The prosecutor did not pursue this issue on redirect examination after Deputy Nastansky made that remark. Instead, defense counsel reopened the issue on recross-examination. In light of this sequence of testimony, the prosecutor's questions were not improper.

Becerra-Arevalo additionally asserts that the prosecutor's closing statements amounted to an improper comment on Becerra-Arevalo's constitutional right to confront witnesses against him. We reject this contention.

During closing argument, the prosecutor stated to the jury, "[Y]ou saw how difficult it was for [Fitzgerald] to testify. You saw how painful it was for her to look at the defendant. You saw how much she did not want to do that. You saw how uncomfortable she was to be in this environment."[21]

"The State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right."[22] Specifically, the State may not invite the jury to draw a negative inference from the defendant's exercise of a constitutional right.[23] The right to confront witnesses against an accused is one such right.[24]

---

[20] See State v. Jungers, 125 Wn. App. 895, 902, 106 P.3d 827 (2005).

[21] Clerk's Papers at 325.

[22] State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)).

[23] Gregory, 158 Wn.2d at 806 (citing State v. Jones, 71 Wn. App. 798, 811–12, 863 P.2d 85 (1993)).

[24] U.S. Const. amend. XI; Wash. Const. art. I, § 22.

But a prosecutor has wide latitude in closing arguments to draw reasonable inferences from the facts in evidence and to express such inferences to the jury.[25] Moreover, "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights."[26] The question is whether the prosecutor "manifestly intended the remarks to be a comment on that right."[27]

A review of the prosecutor's entire closing argument makes clear that her statements were not in any way a comment on Becerra-Arevalo's exercise of his constitutional rights. In closing, the prosecutor emphasized that the case hinged on the witnesses' credibility and that the jury alone was responsible for judging credibility. The prosecutor's reference to Fitzpatrick's demeanor was in support of her argument that the jury must consider the witnesses' motives and credibility. No evidence demonstrates that the prosecutor's intention was to comment on Becerra-Arevalo's right to confront witnesses against him.

We conclude that the prosecutor's conduct was not improper.

## PREJUDICE

Even assuming the prosecutor's comments were improper, Becerra-Arevalo's prosecutorial misconduct claim fails because he does not satisfy the heightened standard of review on appeal for prejudicial effect.

Once a defendant establishes that the prosecutor's conduct was improper, a reviewing court determines whether the defendant was prejudiced under one of

---

[25] Gregory, 158 Wn.2d at 860; Dhaliwal, 150 Wn.2d at 577.
[26] Gregory, 158 Wn.2d at 806.
[27] State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991).

two standards of review.[28] If the defendant objected at trial, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."[29] However, where, as here, the defendant failed to object to the prosecutor's alleged misconduct, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[30]

Under this latter heightened standard of review, Becerra-Arevalo carries the burden of establishing that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[31] Moreover, "[r]eviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."[32] Even flagrant misconduct can be cured.[33]

Because Becerra-Arevalo did not object at trial to the prosecutor's alleged misconduct, he must establish prejudice under the heightened standard. He fails to meet this burden here.

We first note that any prejudice derived from Officer Nastansky's remarks was primarily attributed to defense counsel's persistent questioning regarding

---

[28] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).
[29] Id.
[30] Id. at 760-61
[31] Id. at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).
[32] Id. at 762.
[33] Id. at n.13 (citing State v. Warren, 165 Wn.2d 17, 27, 195 P.3d 940 (2008)).

Deputy Nastansky's belief that Becerra-Arevalo was lying and her theories on the relationship between being guarded and being guilty. As discussed above, Becerra-Arevalo's defense counsel repeatedly posed questions to Deputy Nastansky on this topic. This sequence of testimony diminishes Becerra-Arevalo's contention that the prosecutor's conduct was flagrant or ill-intended. Any prejudicial impact was exacerbated, if not initially caused, by defense counsel.

Second, Becerra-Arevalo cannot prove that a curative instruction would not have obviated any prejudicial impact on the jury. To the contrary, any prejudicial effect resulting from the prosecutor's alleged misconduct was neutralized by the jury instructions.[34] Here, the jury was instructed, "You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness."[35] The instructions also stated, "The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence...."[36] The prosecutor referred to these instructions numerous times during closing argument. We presume that the jury followed the court's instructions.[37]

---

[34] See State v. Montgomery, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) ("Important to the determination of whether opinion testimony prejudices the defendant is whether the jury was properly instructed.").

[35] Clerk's Papers at 8.

[36] Id.

[37] State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

Moreover, defense counsel made no effort to defuse the alleged prejudice by requesting a curative instruction or objecting to the prosecutor's remarks. The absence of a curative instruction or motion for mistrial strongly suggests that the conduct was not prejudicial.[38] Even "[i]f the prejudice could have been cured by a jury instruction, but the defense did not request one, reversal is not required."[39] Furthermore, "[c]ounsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver . . . on appeal."[40] This appears to be the case here.

Becerra-Arevalo also fails to show a substantial likelihood that the prosecutor's statements affected the jury's verdict. Deputy Nastansky was not the sole witness in this case whose testimony undermined Becerra-Arevalo's credibility—Fitzpatrick and Plemmons-Hutchens also offered testimony unfavorable to Becerra-Arevalo.

Becerra-Arevalo testified that when Deputy Nastansky arrived to speak to him on November 12, 2009, he did not know the reason for her visit and was unaware of any allegations against him. Becerra-Arevalo further testified that his manager, Teresa Plemmons-Hutchens, first spoke to him about the allegation on November 12, 2009, after Deputy Nastansky had contacted him. But Plemmons-Hutchens's testimony contradicted Becerra-Arevalo's statements. She testified that she spoke to Becerra-Arevalo on November 2, 2009—10 days before

---

[38] See State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

[39] Dhaliwal, 150 Wn.2d at 578 (citing State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

[40] Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960).

Deputy Nastansky contacted him—and informed him of the allegation against him.

Furthermore, during direct examination, Becerra-Arevalo denied visiting the property where Fitzpatrick worked on the day of the assault. However, time cards, written in Becerra-Arevalo's handwriting, proved contrary. They showed that Becerra-Arevalo worked at Fitzpatrick's office building on the day of the assault and at approximately the same time Fitzpatrick testified the assault occurred. Plemmons-Hutchens also testified that Becerra-Arevalo told her that he visited the property where Fitzpatrick worked on the day of the assault and that Fitzpatrick was not there.

Finally, on cross-examination, Becerra-Arevalo denied touching or kissing Fitzpatrick. He also denied admitting to Plemmons-Hutchens that he assaulted Fitzpatrick. But Plemmons-Hutchens later testified that, on November 12, 2009, Becerra-Arevalo admitted to her that he had hugged and kissed Fitzpatrick. Therefore, significant testimony conflicted with Becerra-Arevalo's version of events surrounding the assault. He cannot demonstrate that any prejudice substantially impacted the jury's verdict.

Accordingly, Becerra-Arevalo fails to show that the heightened standard of review for prejudicial effect has been met.

Because we reverse on the prosecutorial misconduct issue, we need not resolve the City's additional claim of error concerning the admissibility of opinion testimony.

We reverse the RALJ court's order reversing Becerra-Averalo's conviction and reinstate the municipal court's judgment and sentence.

Cox, J.

WE CONCUR: