[No. 31028-3-I.   Division One.   January 31, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN PAUL MIERZ, *Appellant.*

*David H. Smith, Rebekah R. Ross,* and *Williams, Kastner & Gibbs,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Francis Drew Zavatsky, Deputy,* for respondent.

AGID, J. — John Paul Mierz appeals his conviction on two counts of assault in the third degree and one count of unlawful possession of wildlife as well as the trial court's order denying his motion for a new trial or arrest of judgment. He

alleges numerous errors by the trial court and his trial attorney.[1] We conclude that any error the court below committed was harmless and that Mierz received effective assistance of counsel. Accordingly, we affirm his conviction.

## FACTS

On April 17, 1989, Mierz found two coyote pups at a construction site. He took them home and raised them in the same manner as his dogs. He kept them in his backyard, which is enclosed by a 6-foot chain link fence. Around July 1990, Department of Wildlife (Department) Captain Bill Hermes informed Department agents Mike Krenz and Jim Suda that Mierz was in illegal possession of two coyotes. The agents were informed that Mierz did not have a permit allowing him to possess the animals as required by state law.

On September 5, 1990, Mierz applied to the Department for a scientific use permit which, if issued, would have allowed him to keep the coyotes. On September 13, 1990, the Department informed Mierz that he could not keep the coyotes without a valid permit and, on November 8, denied his application for a permit. Mierz requested an administrative appeal of the Department's decisions. On July 16, 1991, the date on which the underlying events in this case took place, the appeal was pending. The appeal was ultimately denied on July 31, 1991.

During this time, Agent Krenz saw Mierz interviewed on a news program. In the interview Mierz stated he was taking the coyotes to the Yakima Indian Reservation where the Department would have no jurisdiction. Shortly after the broadcast, Suda and Krenz drove by Mierz' home and did not see the coyotes. Throughout the fall and winter of 1990-91, the agents monitored Mierz' backyard when they were in the area to check for the presence of the coyotes. In the spring of 1991, Suda found out that the coyotes were back on Mierz' property. Suda and Krenz later spoke with a judge and a prosecutor at Aukeen District Court about the need to

---

[1]Mierz forwards 22 assignments of error and 10 issues pertaining to assignments of error. We have addressed only those we consider dispositive.

have a search warrant to seize the coyotes. They were misinformed that, if the coyotes were in plain view, they could be seized without a warrant.[2]

On July 16, 1991, Suda, Krenz and Bruce Richards, another wildlife agent, met with Jeanne Wasserman of the Progressive Animal Welfare Society. They went to Mierz' home and saw the coyotes in his backyard. Suda and Krenz spoke with Mierz at his garage door and informed him that they were there to retrieve the coyotes. The agents asked Mierz if he had a permit. Mierz told them that he did not but that his application was on appeal and it was his understanding that he was allowed to retain the coyotes pending the outcome of the appeal. Mierz invited the agents and Wasserman into his home to call Robin Sherry, the permit biologist at the Department, to verify this claim. Krenz attempted to contact Sherry and two other officials at the Department, but none was available.

Mierz then ushered the agents and Wasserman outside his house, shut the door behind him and stated: "I have had enough. Get out of here. Get off my property. Get out of my yard." The agents informed Mierz they intended to confiscate the coyotes, and Mierz asked them if they had a search warrant. The agents replied that they did not need one because the coyotes were in plain view. At this point, the agents were standing outside Mierz' fenced yard. They observed him go into the yard, catch the coyotes and put them in their kennel. Mierz later removed the coyotes from the kennel and appeared to be carrying them into his house. Agent Krenz told Mierz to put the coyotes back into the kennel, which he did. Mierz padlocked the kennel and threw the key over his fence.

---

[2] This advice was erroneous because the plain view exception to the warrant requirement does not even apply in this situation. A plain view seizure is valid where officers have a prior justification for an intrusion, they inadvertently discover incriminating evidence and they have immediate knowledge that an item is evidence. *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984). As is discussed *infra*, the agents did not have a prior justification for entering Mierz' yard, nor was the evidence inadvertently discovered.

Krenz then climbed Mierz' fence and entered his backyard. In so doing, he knocked loose a padlock on the gate into the backyard. Suda followed Krenz through the gate into the yard where he was approached by one of Mierz' dogs. Suda reported hearing Mierz command the dogs to attack the agents. Wasserman testified that she heard Mierz yell "get 'em" and "attack".

Krenz approached Mierz and informed him he was under arrest and attempted to take hold of his arm in order to escort him to the agents' car. Mierz began struggling and grabbed onto the chain link fence. Krenz again informed Mierz he was under arrest and attempted to peel his hand off the fence with a finger hold. Suda approached to assist Krenz, and one of Mierz' dogs bit him on the back of the leg. Krenz reported that he heard Mierz command his dog to attack Suda. Mierz was eventually handcuffed and taken into custody. As he was being escorted to the agents' car, he attempted to bite Krenz on the back of his hand. Mierz was also injured in the melee.

Mierz was charged with two counts of assault in the third degree, contrary to RCW 9A.36.031(1)(g), and one count of unlawful possession of wildlife, contrary to RCW 77.16.040 and RCW 77.08.010(16). The State moved pretrial to bar Mierz from arguing that he was acting in self-defense under a reasonable belief that he was entitled to possession of the coyotes in defending the assault charges. This motion was granted.

Mierz' trial began, and the jury heard testimony from one witness, Wasserman. After her testimony, Mierz' attorney and the prosecutor agreed to a stipulated trial based upon all of the police reports related to the case, photographs, medical reports, witness statements and Wasserman's testimony. Mierz waived his right to a jury trial, and the court signed the findings of fact and conclusions of law prepared by the prosecutor and signed by Mierz and his attorney. The court questioned Mierz extensively regarding his understanding of the effect of agreeing to a stipulated trial, and Mierz indicated he

understood. The court found Mierz guilty as charged. Following the trial, Mierz' attorney withdrew.

Represented by new counsel, Mierz then moved for a new trial, arrest of judgment or, alternatively, for a modification of the findings of fact and conclusions of law. The court denied the motion for a new trial or arrest of judgment and authorized certain revisions in the findings of fact and conclusions of law. This appeal followed.

Discussion

As a preliminary matter, we note that it is not clear from the parties' briefs whether Mierz' original trial counsel moved to suppress evidence obtained as a result of the agents' entry into his yard. Mierz argues that the trial court should have granted a motion to suppress the evidence as the fruits of an unlawful entry, suggesting that his counsel did move to suppress this evidence. The State asserts his attorney never moved to suppress this evidence. We find no indication in the record that a motion to suppress was brought, and we treat this issue as one raised for the first time on appeal.

RAP 2.5(a) provides that an error of constitutional magnitude may be raised for the first time on appeal. Admission of evidence obtained in violation of either the federal or state constitution is an error of constitutional magnitude. A failure to move to suppress evidence, however, constitutes a waiver of the right to have it excluded, and the trial court does not err in considering evidence that the defendant has not moved to suppress. *State v. Tarica*, 59 Wn. App. 368, 372-73, 798 P.2d 296 (1990). Because there was no error below, this issue is not properly raised for the first time on appeal as a trial court error. As discussed below, however, this issue is properly considered in the context of whether Mierz received effective assistance of counsel, and we analyze it accordingly.

I
Ineffective Assistance of Counsel
A. Failure To Seek Suppression

To establish ineffective assistance of counsel, Mierz must show both that his counsel's performance was deficient

and that he was prejudiced by this deficiency. *Tarica*, 59 Wn. App. at 374 (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). A defendant is prejudiced where counsel's "errors were so egregious that the defendant was deprived of a fair trial". 59 Wn. App. at 374. In *Tarica*, we addressed the issue presented here: whether failure to bring a motion to suppress evidence constitutes ineffective assistance of counsel. We held that the first prong of the ineffective assistance of counsel test was met because

> [a]s a normal rule, defense counsel brings such a motion any-time there may be a question as to the validity of a search and subsequent seizure. Because the motion is made pretrial and not in front of the jury, there does not appear to be any way to char-acterize the failure to bring the motion to suppress as a legiti-mate trial tactic. Therefore, [the defendant's] counsel's perform-ance was deficient.

59 Wn. App. at 374. We then analyzed the probable outcome of a suppression hearing to determine whether the prejudice prong of the *Strickland* test was met. We based that determi-nation on the likelihood that such a motion would have been granted. That prong was also satisfied in *Tarica* because a motion to suppress probably would have been granted had it been brought. 59 Wn. App. at 378.

■ Applying the same analysis to the facts of this case, we hold that Mierz' trial counsel's failure to seek suppres-sion of evidence obtained as a result of the agents' warrant-less entry into his backyard was deficient.[3] However, we conclude that he was not prejudiced by this failure and can-not satisfy both prongs of the test for ineffective assistance of counsel. Thus, we cannot reverse his conviction on that basis.

---

[3]This discussion pertains only to evidence of Mierz' assaults on the officers, not to evidence of his possession of wildlife. Had this case involved only the latter charge, his counsel's performance would not have been deficient. Mierz does not challenge the findings that he possessed the coyotes or that they were recovered from his yard. Because lack of possession was not a part of his defense to the wildlife charge, there was no reason for his attorney to seek to suppress evidence that he possessed the coyotes.

The agents' entry into Mierz' yard and his subsequent arrest violated his right to be free from unreasonable searches and seizures under the Fourth Amendment.[4] Mierz' fenced backyard is part of the curtilage of his house and, as such, is a constitutionally protected area. *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990). Although the police may enter areas of the curtilage that are impliedly open, they may not lawfully enter a portion of the curtilage that is not open to public use. *Ridgway*, 57 Wn. App. at 918. Mierz' backyard was clearly not open to public use. It was enclosed by a 6-foot fence, and the gate was secured by a padlock. The agents' entry into Mierz' backyard was an intrusion into a constitutionally protected area[5] and, as discussed below, it was justified neither by an exception to the warrant requirement nor by statute. It was therefore unconstitutional.[6]

First, no exigent circumstances were present. A warrantless search and seizure may be valid where exigent cir-

---

[4]U.S. Const. amend. 4. We do not address Mierz' claims under article 1, section 7 of the Washington Constitution because it is not necessary to our disposition of the case.

[5]"At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a [person's] home and the privacies of life,' *Boyd* v. *United States*, 116 U. S. 616, 630 [29 L. Ed. 746, 6 S. Ct. 524] (1886), and therefore has been considered part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984). A fenced, locked backyard immediately adjacent to Mierz' house is obviously within the curtilage as defined by the United States Supreme Court. *United States v. Dunn*, 480 U.S. 294, 301, 94 L. Ed. 2d 326, 107 S. Ct. 1134 (1987). *See also State v. Walker*, 154 Wis. 2d 158, 179-86, 453 N.W.2d 127, 136-38, *cert. denied*, 498 U.S. 962 (1990), in which the Wisconsin Supreme Court reached the same conclusion we reach here on virtually identical facts.

[6]The agents' entry into the fenced yard to remove the coyotes was a Fourth Amendment search, and the open view doctrine does not apply. Under that doctrine, an officer's observation of evidence from a lawful vantage point is not a search at all, and such observations can be used as the basis for securing a search warrant. *State v. Ferro*, 64 Wn. App. 181, 182, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992). The mere observation of contraband, which is what occurred here, does not justify a warrantless "intrusion into a constitutionally protected area for the purpose of examining more closely, or seizing, the evidence which has been observed". 64 Wn. App. at 182.

cumstances, such as a risk of flight or destruction of evidence, are present. *See State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986) (listing factors relevant to the exigent circumstances exception). There was no risk that Mierz would either destroy the coyotes or remove them from his property before a warrant could be secured.

■ Second, the consent exception does not apply. Under this exception, evidence obtained as a result of a warrantless search will not be suppressed where the defendant or a competent third party gives valid, voluntary consent and the ensuing search does not exceed the scope of the consent. *State v. Hastings*, 119 Wn.2d 229, 234, 830 P.2d 658 (1992). Although Mierz initially invited the agents into his home to use the phone, after escorting them out the front door he plainly stated that he wanted them off his property if they did not have a warrant. The agents obviously had no consent to enter into Mierz' fenced backyard, and whatever initial consent they had to enter his home did not extend to his yard.

■ Finally, the agents had no statutory authority to enter Mierz' yard to arrest him. Although a warrantless arrest may be effected where an officer has probable cause to believe a felony has been or is being committed or where a misdemeanor is committed in the officer's presence pursuant to RCW 10.31.100, this statutory authorization only applies where the arrest occurs in a public place. To effect a warrantless arrest in a home there must be both probable cause and some exigency justifying the intrusion. *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *State v. Dresker*, 39 Wn. App. 136, 692 P.2d 846 (1984). We hold that the same protection extends to the curtilage of a home not open for public use in which there is a reasonable expectation of privacy,[7] and that Mierz' warrantless arrest was unlawful,

---

[7]No Washington case directly holds that a warrantless arrest in the curtilage of a home not open to public use is unlawful when no exception to the warrant requirement applies. However, our holding here flows directly from the Supreme Court's recent decision in *State v. Solberg*, 122 Wn.2d 688, 861 P.2d 460 (1993). In *Solberg*, the court upheld a warrantless arrest on a front porch of a home. The

even if the agents did observe him commit a misdemeanor. Although commission of a misdemeanor in the presence of an officer authorizes a warrantless arrest, it does not follow that the officer may enter into a person's home, or the protected curtilage of the home, to effect that arrest in the absence of some exception to the warrant requirement.[8] Thus, the trial court erred in ruling that Mierz' arrest was lawful under RCW 10.31.100 because he had committed a misdemeanor[9] in the agents' presence.

Because the agents' entry into Mierz' yard and his subsequent arrest were justified neither by an exception to the warrant requirement nor authorized by statute, Mierz' trial counsel was deficient in failing to seek suppression of the evidence of assaults which was obtained through and, indeed, occurred because of their unlawful activity. Thus, we must determine whether Mierz was prejudiced, based on the likelihood that this evidence would have been properly excluded had a motion to suppress been brought. We conclude that he was not prejudiced because, as a matter of public policy, evidence of the assaults on the agents falls outside the scope of the exclusionary rule.[10]

---

court reasoned that the defendant did not have a reasonable expectation of privacy in that area because the porch was open to public use. 122 Wn.2d at 695-700. Here, Mierz had such an expectation in his fenced and padlocked yard. Other jurisdictions have adopted the rule we adopt here and have held that, absent exigent circumstances, such an arrest violates either the Fourth Amendment or state guaranties against warrantless intrusions. As in this case, these courts found a violation because the expectation of privacy in curtilage not open to the public is similar to that in one's home and is entitled to the same protection. *See*, *e.g.*, *State v. Adams*, 791 S.W.2d 873 (Mo. Ct. App.), *cert. denied*, 498 U.S. 999 (1990); *Brown v. State*, 75 Md. App. 22, 540 A.2d 143, *cert. denied*, 313 Md. 31 (1988); *Walker*, at 179-86.

[8]*See Payton*; *Oliver v. United States*, 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984).

[9]The court ruled that, in preventing the agents from retrieving the coyotes, Mierz had obstructed an officer in violation of RCW 9A.76.020(3).

[10]In *State v. Aydelotte*, 35 Wn. App. 125, 665 P.2d 443 (1983), we addressed the issue raised here and reached the same conclusion on a different basis. There, we held that such evidence should not be suppressed because, under the attenuation

■ The public policy in Washington, as reflected by statute[11] and case law,[12] evinces a heightened concern for the safety of law enforcement officers. This policy mandates admission of evidence of assaults against officers while they are performing their official duties and requires the citizen whose rights have been violated to seek redress through a civil action. We find the agents' violation of Mierz' constitutional rights extremely offensive. However, we cannot rule that suppression of assault evidence is a proper remedy for a constitutional violation preceding the assault. Such a holding would require suppression in future cases where the injury to the officer is far more serious, thus further endangering the officers charged with performing difficult and dangerous tasks as part of their official duties. The logical implication of such a holding would be suppression even where an officer is murdered.[13]

Mierz has not argued that exclusion of assault evidence is always an appropriate remedy. Rather, he has suggested that exclusion is appropriate where, as here, the injury to the offi-

---

doctrine, the evidence is sufficiently distinguishable from the police illegality to be purged of the primary taint. 35 Wn. App. at 131-32. *But see State v. Apodaca*, 67 Wn. App. 736, 839 P.2d 352 (1992), in which Division Three reversed a second degree assault conviction on the ground that the gun and the defendant's statements should have been suppressed as evidence obtained through an illegal search. We must disagree with the opinion in *Apodaca* because, in our view, it does not adequately address the significant policy issue in these cases, that of officer safety in the course of effecting an arrest.

[11]*See, e.g.*, RCW 10.95.020(1) (raising premeditated murder to aggravated murder if the victim is a law enforcement officer performing official duties); RCW 9A.36.031 (providing special protection against assault for officers).

[12]*See, e.g., State v. Hoffman*, 116 Wn.2d 51, 100, 804 P.2d 577 (1991) (stating, in dicta, that an officer is entitled to the protection of the laws against assault notwithstanding the officer's inadvertent infringement on a person's constitutional rights).

[13]*See Commonwealth v. Saia*, 372 Mass. 53, 58, 360 N.E.2d 329, 332 (1977) ("as to our conclusion that the rule of exclusion is not applicable here, we suggest this: Suppose a police officer or other person had been killed in the affray . . .. That hypothesis illustrates the inappropriateness of any ruling that the observations of the police were inadmissible under the exclusionary rule"), *cited with approval in Aydelotte*, 35 Wn. App. at 133.

cers is relatively minor. We can find no logical or principled basis for distinguishing these types of cases according to the degree or seriousness of the injury to the officer. Accordingly, we hold that, despite the officers' unconstitutional activity, evidence of assaults against an officer fall outside the exclusionary rule. Had a motion to suppress been brought, the assault evidence would not have been properly suppressed. Under the analysis in *Tarica*, Mierz was not prejudiced by his counsel's deficient representation and, thus, was not denied effective assistance of counsel.

### B. Stipulated Trial

Mierz also contends that he was denied due process and effective assistance of counsel because of the stipulated trial procedure used in his case. Mierz' trial attorney agreed to a stipulated trial, and both he and Mierz signed the proposed findings of fact and conclusions of law prepared by the prosecutor. Mierz argues that, by doing so, his attorney stipulated to the conclusions of law, not just to the facts. The State argues that Mierz' attorney stipulated to the facts only and that his signature constitutes his approval of the form of the document, not its content. Mierz also argues that the trial court did not independently arrive at its conclusions of law because it believed itself bound by both the findings of fact and conclusions of law submitted by the prosecutor, rather than by just the findings of fact upon which it was to reach its own legal conclusions.

The trial record does not support Mierz' contentions. It is clear the trial court understood it was bound only by the stipulated facts submitted by the parties and not by the proposed conclusions of law. Furthermore, Mierz has not been prejudiced by any alleged deficiency in his counsel's performance because the record also establishes that the trial court independently reviewed the facts and reached its own conclusion about Mierz' guilt. Mierz was not denied effective assistance of counsel by the stipulated trial process because he has shown neither deficient performance by his counsel nor prejudice to his case. *See Tarica*, 59 Wn. App. at 374.

Finally, Mierz argues that the stipulated trial process amounts to a guilty plea and that, as such, he was entitled to the safeguards of CrR 4.2 and CrR 6.1(a). We reject this argument. A stipulated trial is fundamentally different from entering a guilty plea.[14] Because these two procedures are not analogous, we hold that CrR 4.2, a rule that by its terms applies to guilty pleas, does not apply to a stipulated trial. In addition, the trial court explained to Mierz at length the effect of giving up his right to a jury trial, and Mierz waived those rights in writing. Mierz was not denied due process or effective assistance of counsel by virtue of the stipulated trial.

## II
### ASSAULT CONVICTIONS

We next address Mierz' contention that the trial court erred in finding him guilty of two counts of assault in the third degree, contrary to RCW 9A.36.031(1)(g). The trial court found him guilty of assault on Agent Suda for commanding his dogs to attack the agent and guilty of assault on Agent Krenz for biting him. Mierz forwards several bases for challenging these convictions. First, he argues the trial court erred in allowing the State to charge him under RCW 9A.36-.031(1)(g), rather than RCW 9A.36.031(1)(a). Second, he contends there is insufficient evidence to uphold the convictions.[15] Third, Mierz asserts that the evidence of his actions

---

[14]*See State v. Johnson*, 104 Wn.2d 338, 705 P.2d 773 (1985), in which the Supreme Court noted the following characteristics of a stipulated trial: the judge or jury determines the defendant's guilt, the State still bears the burden of proof beyond a reasonable doubt, the defendant is not precluded from offering evidence or cross-examining witnesses, but just stipulates to the evidence presented by the State, and the defendant retains the right to appeal. 104 Wn.2d at 343. On the other hand, when the court takes a guilty plea it merely determines whether the defendant's factual statement is sufficient to support a finding of guilt as to each element of the crime and whether the defendant is knowingly and intelligently waiving his trial and attendant constitutional rights. The court makes no finding of guilt as such, the defendant has no right to present evidence, and there is no right to appeal from a plea of guilty.

[15]We do not address this issue further, except to note that the facts to which Mierz stipulated at trial are clearly sufficient to uphold his convictions.

in resisting arrest should be suppressed because his arrest was unlawful.[16]

Mierz was charged under RCW 9A.36.031(1)(g), which provides that a person is guilty of assault in the third degree if he or she:

> Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

Mierz contends he should have been charged under RCW 9A.36.031(1)(a), which provides that a person is guilty of assault in the third degree if he or she:

> With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another[.]

Mierz argues that, had he been charged under subsection (1)(a), he could have successfully argued the illegality of the agents' warrantless arrest as a defense to the assault charges because that section of the statute requires that the apprehension be lawful. Because he was effectively denied this defense, he concludes, he was denied equal protection. He contends subsection (1)(a) is a special statute and subsection (1)(g) is a general statute. Thus, the prosecution was required to charge him under the former statute based on the rule requiring the State to charge under the special statute when concurrent statutes exist. *See State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984).

This argument is disposed of by our opinion in *State v. Belleman*, 70 Wn. App. 778, 784, 856 P.2d 403 (1993). There we held that subsection (1)(g) was not a special statute because a violation of subsection (1)(g) is not always a violation of subsection (1)(a). RCW 9A.36.031(1)(a) and (1)(g) merely provide the State with an option to charge under either subsection in prosecuting an assault against an officer and this ability to chose does not violate equal protection. 70

---

[16]This issue has been addressed above in conjunction with the ineffective assistance of counsel issue.

Wn. App. at 784. Accordingly, we hold that subsection (1)(a) is not a special statute and Mierz was properly charged.

Mierz also argues that, because the agents were acting unlawfully when they entered his yard and arrested him, they were not performing their official duties and, therefore, cannot claim the protection of RCW 9A.36.031(1)(g). In *State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991), the Supreme Court discussed this issue in the context of Washington's aggravated murder statute. It stated that "[w]hether the defendant[']s constitutional rights might in some possible fashion have been violated is not" determinative of whether an officer was performing official duties at the time. 116 Wn.2d at 99. Although we recognize that this discussion in *Hoffman* is dicta because the police activity there was held to be lawful, we find the reasoning persuasive. We hold that an officer is involved in "official duties" within the meaning of RCW 9A.36.031(1)(g) even where a constitutional violation results so long as the "officer is not on a frolic of his or her own". 116 Wn.2d at 100.

A related issue is Mierz' contention that the trial court erred in granting the State's motion in limine barring him from arguing defense of property in defending against the assault charges. Under RCW 9A.16.020(3), force may be used

in preventing or attempting to prevent . . . a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession . . ..

As discussed below, Mierz was not in lawful possession of the coyotes. Because his possession was not lawful, the defense was not available to him under the statute, and the court properly barred it.

### III
### POSSESSION OF WILDLIFE CONVICTION

Mierz was convicted of unlawful possession of wildlife in violation of RCW 77.16.040. Under that statute, it is unlaw-

ful to possess wildlife without a permit. RCW 77.08.010(16) defines "wildlife" as

> all species of the animal kingdom whose members exist in Washington in a wild state. This includes but is not limited to mammals, birds, reptiles, amphibians, fish, and invertebrates. The term "wildlife" does not include feral domestic mammals . . . .

Mierz did not have a permit entitling him to possess the coyotes. However, he argues that he cannot be guilty of violating the statute because, as wild animals that have been domesticated, the coyotes are "feral domestic mammals", not wildlife. Statutes are to be "construed to effect their purpose, and unlikely, absurd or strained consequences" are to be avoided. *Ski Acres, Inc. v. Kittitas Cy.*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992). We reject Mierz' proposed reading of the statute because it makes little sense. His interpretation would allow anyone to circumvent the statute by domesticating an animal that would otherwise be wildlife under the definition. Conversely, his reading would criminalize possession of an untamed domestic species. A more plausible reading is that the Legislature intended to exclude domesticated species (such as cats and dogs) when they exist in a wild or "feral" state from coverage under the statute.

Mierz argues in the alternative that, even if coyotes are wildlife within the meaning of the statute, he cannot be guilty of violating the statute because he was entitled to possess the coyotes pending the final outcome on his application for a permit. At the time the coyotes were seized, Mierz' application for a permit had been denied and his appeal was pending. He argues that possession of the coyotes would not have become unlawful until the Department concluded its proceedings. RCW 77.16.040 states that it is unlawful to possess wildlife without a permit. Even if Mierz had been granted a permit he would only have been legally entitled to possess the coyotes as of the effective date of the permit. Coyotes are wildlife within the meaning of RCW 77.08-.010(16), and Mierz was in possession of the coyotes without

a permit in violation RCW 77.16.040. Thus, we hold the trial court properly concluded that, as a matter of law, Mierz was guilty of violating the statute.

We affirm.

WEBSTER, C.J., and COLEMAN, J., concur.

Reconsideration denied June 8, 1994.

Review granted at 125 Wn.2d 1007 (1994).