# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49682-8-II |
| Respondent, | |
| v. | |
| WILLIAM JILES JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — William Jiles Johnson appeals his convictions for felony violation of a no contact order (NCO), violation of a protection order, and obstructing a law enforcement officer. Johnson argues that: (1) his right to a public trial was violated, (2) the prosecutor committed misconduct during closing argument by expressing an opinion on Johnson's guilt, (3) the trial court should have suppressed all evidence seized during an allegedly unlawful entry into Johnson's home, (4) he received ineffective assistance of counsel because his defense counsel failed to (a) move to suppress the evidence seized after the warrantless entry into his home, (b) move to suppress portions of jail calls introduced at trial discussing his bail, plea negotiations, and Department of Corrections (DOC) parole status, (c) move for a mistrial after a portion of another jail call was mistakenly played, and (d) memorialize off the record discussions during trial, (5) the trial court erred by imposing discretionary legal financial obligations (LFOs) without making an adequate inquiry into his ability to pay, and (6) the trial court erred by refusing to instruct the jury

on the lesser included offense of fourth degree assault.[1]  In his statement of additional grounds (SAG),[2] Johnson argues that his time for trial right was violated.

We hold that because the record is insufficient to determine whether a closure of the courtroom occurred, we are unable to determine whether Johnson's right to a public trial was implicated or violated, and thus, his public trial right claim fails.  We hold that, even if the prosecutor's comments during closing argument were improper, Johnson fails to show that the prosecutor's conduct was so flagrant and ill intentioned that an instruction would not have cured the resulting prejudice.  We do not reach the merits of Johnson's claim that the evidence of his obstructing a law enforcement officer should have been suppressed because he failed to file a motion to suppress the evidence at the trial court, and thus, he has waived this issue.  We hold that all of Johnson's ineffective assistance of counsel claims fail.  We also hold that the trial court erred in imposing discretionary LFOs without making an individualized inquiry into Johnson's ability to pay, and the trial court did not err by refusing to instruct the jury on a lesser included offense.  Lastly, we hold that Johnson's SAG claim fails because the record is insufficient to analyze it.  Accordingly, we affirm Johnson's convictions and reverse the discretionary jury demand fee from the judgment and sentence, and remand for the sentencing court to conduct an adequate individualized inquiry under *Blazina* prior to imposing discretionary LFOs.

---

[1] To the extent that Johnson assigns error to additional arguments that are not adequately briefed, we decline to address them.  RAP 10.3(a)(6).

[2] RAP 10.10.

FACTS

On July 4, 2016, Angela Lingle called the police to report that Johnson had violated an NCO and assaulted her in his home. Lingle and Johnson each knew of the NCO. The NCO permitted contact in public places and on the telephone, but it did not allow Johnson to be in a private residence with Lingle. Officers approached the home and demanded that Johnson exit the house and be arrested. Johnson refused to exit the home. Eventually officers broke down Johnson's door and arrested him. The State charged Johnson with felony violation of an NCO, violation of a protection order, obstructing a law enforcement officer, and two counts of tampering with a witness. On August 25, defense counsel requested a continuance because he was scheduled to be in a different trial at the same time. The trial court continued the trial to October 10. Johnson's jury trial commenced on October 13.

## I. OFFICER REECE'S TESTIMONY

Officer Terry Reece testified about the events of July 4. Officer Reece described how he took a position by a window so that he could view Johnson in the home. Officer Reece was in this spot for a considerable amount of time. One officer covered a different section of the house, while another knocked on the front door and asked Johnson to exit the house.

Officer Reece had a view of Johnson for almost the entire time that he was looking through the window. He yelled at Johnson and told him to come out. Johnson responded that he was not under arrest and the officers needed to leave. Officer Reece testified that in domestic violence calls, officers must make an arrest of the primary aggressor if they have probable cause to believe that person was the aggressor. Johnson continued to argue with Officer Reece and the officer at the front door.

After some time, Johnson moved from where he was, and because Officer Reece could not see Johnson from this vantage point, he ripped out the window air conditioner that was obstructing his view in order to watch Johnson. When describing why he did this, Officer Reece stated that "[Johnson] was in the kitchen. Of course there's knives in the kitchen, so I wanted to see what he was doing." I Verbatim Report of Proceedings (VRP) at 69. Another officer informed Officer Reece that they were going to break down the front door to effectuate an arrest.

## II. WARRANTLESS ENTRY

Officer Kenneth Hardy and Officer John Reeves also testified to the events at Johnson's home that night. Officer Reeves testified that the officers had probable cause to arrest Johnson for domestic violence and that Washington law requires officers to make an arrest when the domestic violence occurred within the preceding four hours. Officer Hardy described how officers used a ram to break down Johnson's door. Officer Hardy was the first officer in the home and told Johnson that he was under arrest. As Officer Hardy placed handcuffs on Johnson, Johnson pulled away and attempted to keep his arms from behind his back. Another officer assisted in handcuffing Johnson as he continued to struggle. Johnson failed to comply and went limp as he struggled against being taken out of the house. After some time, the officers removed Johnson from the home. Officer Reeves testified that Johnson continued to struggle against the arrest until he was placed into the patrol car.

## III. LINGLE'S TESTIMONY

Lingle testified at trial. On July 4, Lingle woke up to Johnson, who was under the influence of drugs, standing next to her. She could tell by the way he was looking at her that he might assault

4

her.  She walked away, but Johnson followed.  He grabbed her face and tried to push her into the bathtub.  She tried to leave.  As she began calling 911, Johnson hit Lingle in the back of the head.

Lingle's 911 calls were played for the jury.  In the 911 call, Lingle described Johnson's status as being on parole with the Department of Corrections (DOC).  Jail calls between Lingle and Johnson were also played during her testimony.  Defense counsel initially objected based on relevance and hearsay, which objections the trial court overruled.  Defense counsel later objected again during Lingle's testimony that the jail calls were prejudicial because they discussed his bail, plea negotiations, and DOC parole status.  The trial court excused the jury, and defense counsel again objected to the jail calls, arguing that they were prejudicial.  The trial court inquired why this issue was not addressed pretrial, and the parties disagreed over whether the State specifically identified which jail calls they intended to play at trial.  After the State asked if defense counsel was making a motion for a mistrial and the court further inquired, defense counsel said that he would have to consult with Johnson; however, he ultimately did not move for a mistrial at that time.  When defense counsel later moved for a mistrial based on Lingle's testimony about Johnson's parole status, the State argued that the evidence was necessary to prove the charges and to show that Johnson was trying to get Lingle to change her testimony.  The court agreed with the State and denied the motion, ruling that the jail calls were relevant and not prejudicial, but that counsel could raise the issue of Johnson's parole status during Lingle's cross-examination.

After playing a different section of jail calls on the second day of trial—the State admitted that it inadvertently played a portion of the wrong jail call and requested that the trial court instruct the jury to disregard it.  The trial court provided a curative instruction, and defense counsel moved for a mistrial on the basis that the call was overly prejudicial.  The trial court denied the motion,

ruling that the call was not prejudicial, and noted that it had already instructed the jury to disregard it.

## IV. DEFENSE'S CASE

After the State rested its case, defense counsel moved to dismiss all charges, but the trial court denied the motion. Johnson testified in his defense. He testified that the officers had tried to contact him inside his home for some time, and they told him that he needed to come outside to be placed under arrest because they had probable cause that he assaulted Lingle. He told them to get a warrant. He then described how the officers forced their way into the home and arrested him. Johnson denied assaulting Lingle.

## V. OFF THE RECORD DISCUSSIONS

During trial and sentencing, there were 18 separate off the record discussions.[3] In each of these discussions, the transcript states "discussion off the record" without detailing who was speaking or what was being discussed.

## VI. CLOSING ARGUMENT

During closing argument, the prosecutor said:

> So, with knowledge of the no-contact orders, with having been previously convicted of them—of violating them twice, and assaulting her in violation of no-contact orders, and doing it despite being told that he didn't want to, he chose to kick in the door, he chose to push her into the tub, he chose to grab her arm, he chose to punch her in the head, he chose to yell at her as she's calling 911. Like a true abuser, he chose to ask her to fix it. And over a course of the months he's calling in her—calling her on the phone, telling her not to testify about how it went down because he's not going to be in her life if he—if he goes down for it.

II VRP at 350. Johnson's counsel stated,

---

[3] Johnson claims there were 19 off the record discussions; however, he cites to only 18.

Who got the power here? She got the power. She likes this no-contact order game. It benefits her. It's unbelievable. He falls for it every time. He falls for it because he's the one that gets arrested, not her. Even though they're in violation and find them both guilty, you can't do that. He's the only one who's spending time in jail. Only he is. Who's got the power here? She got the power.

II VRP at 352. During the State's rebuttal, the prosecutor argued:

[Lingle] gets up on the stand. She's, like, I wanted to marry him. I was with him for eight years. I still want to marry him. I just don't want him to be a drug addict. I want him to be a good father to my daughter and to be the man that he said he would be. Did you hear any hate from her? Did you hear any vindictiveness from her? This vindictive woman? It's all her fault. She invites him. No. They're living together. They are trying to work on it, as she said. And, yeah, it's in violation, but that's his fault not hers.

"You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions." Guess what, bold print, second page. You are aware of it, Mr. William Johnson, because you signed that piece of paper. Not her fault. She's just trying to do what she knows best to hold together a rat's nest, penitentiary-type relationship. This thing holds her prisoner. She's got a child with this man.

VRP at 358-59. Johnson did not object to any of these statements.

## VII. Verdict and Sentencing

While discussing the jury instructions, defense counsel requested that the trial court instruct the jury on the lesser included offense of fourth degree assault. The trial court declined to give the lesser included instruction because the evidence did not support it. The jury found Johnson guilty of a felony violation of an NCO, violation of a protection order, and obstructing a law enforcement officer. The trial court sentenced Johnson to a standard range sentence. The trial court also imposed a $500 dollar victim assessment fee, a $200 criminal filing fee, a $250 jury demand fee, and a $100 DNA collection fee. The sentencing court did not make an individualized inquiry into

7

Johnson's current or future ability to pay the discretionary jury demand fee. Johnson appeals his three convictions and the imposition of LFOs.

ANALYSIS

I. PUBLIC TRIAL RIGHT

Johnson argues that because 18 off the record discussions resulted in a closure of the courtroom, his right to a public trial was violated. We hold that because Johnson did not make a sufficient record before the trial court, we are unable to determine whether his right to a public trial was implicated or violated. Thus, this claim fails.

A criminal defendant's right to a public trial is guaranteed by our federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art I, § 22. We analyze whether the trial court impermissibly closed the courtroom according to a three-step framework. *State v. Love,* 183 Wn.2d 598, 605, 354 P.3d 841 (2015). First, we ask whether a defendant's public trial right attaches to the proceeding at issue. *Love,* 183 Wn.2d at 605. Second, if the public trial right attaches to the proceeding, we ask whether the courtroom was closed. *Love,* 183 Wn.2d at 605. Third, we ask whether the courtroom closure was justified. *Love,* 183 Wn.2d at 605.

The appellant carries the burden to prove the first two steps while the proponent of the alleged closure carries the burden to prove the third step. *Love,* 183 Wn.2d at 605. We review whether the right to a public trial has been violated de novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

When the public trial right attaches, the trial court must consider the *Bone-Club*[4] factors and make specific findings on the record justifying a closure. Violation of the right to a public trial is a structural error, and the remedy is reversal and remand for a new trial. *State v. Wise,* 176 Wn.2d 1, 13-14, 19, 288 P.3d 1113 (2012).

Here, Johnson argues that each of the 18 off the record discussions constitute sidebar discussions that were "presumably evidentiary rulings that implicate public trial rights." Br. of Appellant at 24. Johnson has the burden of creating a sufficient record for us to examine whether or not there was a closure. *Love,* 183 Wn.2d at 605. The record on appeal does not provide sufficient detail for us to determine whether the right to a public trial attaches. Thus, Johnson is unable to meet his burden in showing that a court closure occurred. Moreover, because the record is insufficient, we are unable to determine whether Johnson's right to a public trial was implicated or violated. Because he has not met his burden, Johnson's public trial right claim fails.

## II. WARRANTLESS ENTRY

Johnson next argues that, because the officers' entry into his home was unlawful, all evidence seized by the officers, including all evidence related to the charge of obstructing a law enforcement officer, should have been suppressed. Johnson claims he made such a motion to suppress during trial. But the record does not contain any motion to suppress. Thus, Johnson

---

[4] *State v. Bone-Club,* 128 Wn.2d 254, 906 P.2d 325 (1995).

argues for the first time on appeal that the evidence of his obstruction after the warrantless entry into his home should have been suppressed.[5]  We hold that Johnson has waived this issue.

RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court."  "The purpose underlying issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals."  *State v. Hamilton*, 179 Wn. App. 870, 878, 320 P.3d 142 (2014).  A defendant who does not make a motion to suppress in the trial court has waived that issue on appeal.  *State v. Mierz*, 127 Wn.2d 460, 468, 901 P. 2d 286 (1995).

Here, Johnson failed to make a motion to suppress the evidence at the trial court.  Thus, he has waived this issue.

### III.  PROSECUTORIAL MISCONDUCT

A.  LEGAL PRINCIPLES

Johnson next argues that the prosecutor committed misconduct during closing by referring to Johnson as a "true abuser" and by referring to his relationship with Lingle as a "rat's nest, penitentiary-type relationship."  Br. of Appellant at 27, 30;[6] II VRP at 350, 358.  Johnson did not object to these comments.  We hold that Johnson has waived this claim because he fails to show

---

[5] Although both parties argue that the proper remedy for an unlawful entry is to suppress all evidence of Johnson's obstruction, neither party cites to any authority that a citizen is permitted to obstruct an unlawful arrest.

[6] Johnson also argues that he received ineffective assistance of counsel because his trial counsel did not object to alleged prosecutorial misconduct during closing argument.  However, because we hold that Johnson fails to show prejudice, he was not prejudiced by his counsel's failure to object.  Thus, this claim of ineffective assistance fails.

that the comments were so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.

To prevail on a claim of prosecutorial misconduct, Johnson must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Because Johnson did not object at trial, he is deemed to have waived any error, "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery,* 174 Wn.2d at 760-61. When there is no objection, we apply a heightened standard requiring the defendant show, "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery,* 174 Wn.2d at 761 (quoting *State v. Thorgerson,* 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

When reviewing a prosecutor's misconduct that was not objected to, we focus "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery,* 174 Wn.2d at 762. The defendant establishes prejudice when the misconduct had a substantial likelihood of affecting the verdict. *Emery,* 174 Wn.2d at 760. When analyzing prejudice, we do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates,* 161 Wn.2d 714, 774, 168 P.3d 359 (2007). Also, we presume that the jury follows the trial court's instructions. *Emery*, 174 Wn.2d at 766.

"In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence." *State v. Reed,* 168 Wn. App. 553, 577, 278 P.3d 203 (2012). A

prosecutor cannot state his or her personal opinion or belief of the defendant's guilt. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006).

B. PROSECUTOR'S COMMENTS AT CLOSING

During closing argument, the prosecutor argued:

So, with knowledge of the no-contact orders, with having been previously convicted of them—of violating them twice, and assaulting her in violation of no-contact orders, and doing it despite being told that he didn't want to, he chose to kick in the door, he chose to push her into the tub, he chose to grab her arm, he chose to punch her in the head, he chose to yell at her as she's calling 911. Like a true abuser, he chose to ask her to fix it. And over a course of the months he's calling in her—calling her on the phone, telling her not to testify about how it went down because he's not going to be in her life if he—if he goes down for it.

II VRP at 350.

We agree with Johnson that the prosecutor's comment that Johnson was a "true abuser" was improper. This comment was an impermissible expression of the prosecutor's personal belief of Johnson's guilt. *See McKenzie*, 157 Wn.2d at 53. However, Johnson fails to show a substantial likelihood that this brief comment affected the verdict. *Emery,* 174 Wn.2d at 760. Moreover, he fails to show that this comment was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery,* 174 Wn.2d at 760-61. Therefore, he has waived this claim.

C. PROSECUTOR'S COMMENTS IN REBUTTAL

Johnson also argues that the prosecutor's "rat's nest, penitentiary-type relationship" comment made in rebuttal argument was improper and, thus, the prosecutor committed misconduct. We agree that the comment was improper, but Johnson fails to show that the comment

was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. Thus, we hold that he has waived his claim.

During closing argument, defense counsel focused on the relationship dynamic between Johnson and Lingle. Defense counsel suggested that Lingle was not a victim, but was the partner with the power in the relationship by virtue of the NCO. In response, the prosecutor argued during rebuttal,

> [Lingle] gets up on the stand. She's, like, I wanted to marry him. I was with him for eight years. I still want to marry him. I just don't want him to be a drug addict. I want him to be a good father to my daughter and to be the man that he said he would be. Did you hear any hate from her? Did you hear any vindictiveness from her? This vindictive woman? It's all her fault. She invites him. No. They're living together. They are trying to work on it, as she said. And, yeah, it's in violation, but that's his fault not hers.
>
> "You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions." Guess what, bold print, second page. You are aware of it, Mr. William Johnson, because you signed that piece of paper. Not her fault. She's just trying to do what she knows best to hold together a rat's nest, penitentiary-type relationship. This thing holds her prisoner. She's got a child with this man.

II VRP at 358-59.

We agree with Johnson that the "rat's nest, penitentiary-type relationship" comment was improper. This comment was an impermissible expression of the prosecutor's personal belief regarding Johnson's guilt. *See McKenzie*, 157 Wn.2d at 53. However, Johnson fails to show a substantial likelihood that this brief comment affected the verdict. *Emery,* 174 Wn.2d at 760. Moreover, he fails to show that this comment was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery,* 174 Wn.2d at 760-61. Therefore, we hold that he has waived this claim.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. LEGAL PRINCIPLES

Johnson argues that because he received ineffective assistance of counsel that his right to a fair trial was violated. He argues that his defense counsel should have: (1) made a motion to suppress the evidence seized during an allegedly unlawful entry into his home, (2) moved to suppress jail calls between him and Lingle which discussed his bail, plea negotiations, and parole status, (3) timely moved for a mistrial after a portion of another jail call was mistakenly played at trial, and (4) memorialized off the record discussions during trial.

A claim of ineffective assistance of counsel presents a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, Johnson must show that: (1) his trial counsel's representation was deficient and (2) his trial counsel's deficient representation prejudiced him. *Sutherby*, 165 Wn.2d at 883.

The first prong is met by a defendant showing that defense counsel's performance falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A defendant alleging ineffective assistance must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *Grier*, 171 Wn.2d at 33 (quoting *Kyllo*, 166 Wn.2d at 863). The second prong is met if the defendant shows that there is a substantial likelihood that the misconduct affected the verdict. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

B. MOTION TO SUPPRESS THE WARRANTLESS ENTRY

Johnson claims that he received ineffective assistance of counsel because his counsel did not move to suppress any evidence seized after the officers' allegedly unlawful entry into his home. Because defense counsel's conduct did not prejudice Johnson, this claim fails.

Here, the State charged Johnson under RCW 9A.76.020(1). RCW 9A.76.020(1) provides that a "person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official power or duties." A determination of whether an arrest for obstructing a law enforcement officer was lawful depends on whether the police were carrying out their lawful duties. *State v. Barnes*, 96 Wn. App. 217, 225, 978 P.2d 1131 (1999).

RCW 10.31.100(2)(c) requires that a law enforcement officer arrest the primary aggressor in a domestic violence situation. A warrantless arrest may be effected where an officer has probable cause to believe a felony has been or is being committed or where a misdemeanor is committed in the officer's presence pursuant to RCW 10.31.100. Johnson argues that RCW 10.31.100(2)(c), which authorizes an officer to arrest a defendant for felony domestic violence, only applies where the arrest occurs in a public place, citing *State v. Mierz*, 72 Wn. App. 783, 866 P.2d 65 (1994), *aff'd*, 127 Wn.2d 460, 901 P.2d 286 (1995). In *Mierz*, Department of Wildlife agents entered the Mierz's property without a warrant, and once there, Mierz assaulted the agents while they were performing their official duties. *Mierz*, 72 Wn. App. at 787. Division One stated in dicta that the agents' warrantless arrest and entry violated Mierz's Fourth Amendment right because the officers had no statutory authority to make a warrantless arrest, and the entry was not justified by any exception to the warrant requirement. *Mierz*, 72 Wn. App. at 790-93.

15

On review, our Supreme Court explained that that there was no need to find an exception to the Fourth Amendment's warrant requirement. *Mierz*, 127 Wn.2d at 472-73. Instead, the court agreed with Division One that evidence of Mierz's assaultive behavior was properly admitted regardless of any alleged Fourth Amendment violation under the facts of this case. *Mierz,* 127 Wn.2d at 472-73. The Supreme Court held that

> [a]ny benefit provided by exclusion of evidence in these cases comes at too high a price. Given the complexity and nuance of Fourth Amendment law, in many cases the law enforcement officer and the citizen may both have sincere or reasonable beliefs about the lawfulness of the entry or arrest. Encouraging citizens to test their beliefs through force simply returns us to a system of trial by combat. The proper location for dealing with such issues in a civilized society is in a court of law.

*Mierz,* 127 Wn.2d at 475. Thus, the court held that even if the entry or arrest by the officers was unlawful, the exclusionary rule did not foreclose admission of evidence of Mierz's assaults where law enforcement officers were performing their official duties in good faith and there was no exploitation of any constitutional violation. *Mierz*, 127 Wn.2d at 475. Similarly here, regardless of the validity of the officers' entry, Johnson had no right to obstruct the arresting officers, and the trial court properly admitted evidence of his obstruction. Thus, even if a motion to suppress had been brought, it would not have had any effect on the outcome of the case. Because the motion would not have changed the outcome of the trial, Johnson fails to prove that his counsel's performance prejudiced him, and this claim fails.

C. MOTION TO SUPPRESS JAIL CALLS

Johnson argues that he received ineffective assistance of counsel because his counsel failed to move to suppress (1) prejudicial and irrelevant portions of jail calls between Johnson and Lingle related to his bail, plea negotiations, and DOC parole status, and (2) a portion of a jail call

16

mistakenly played to the jury by the State. We disagree because even if counsel was deficient by not moving pretrial to suppress the jail calls, Johnson fails to show that there is a substantial likelihood that the misconduct affected the verdict. Because he fails to show prejudice, his claim of ineffective assistance of counsel fails.

Assuming without deciding that defense counsel was deficient for not moving pretrial to suppress the jail calls, Johnson must show that there is a substantial likelihood that the misconduct affected the verdict. *Lewis*, 156 Wn. App. at 240. Johnson cannot show that there is a substantial likelihood that the admission of the jail calls affected the verdict. Defense counsel's initial objections based on relevance and hearsay, were properly overruled by the trial court. By the time defense counsel later objected again during Lingle's testimony, the court properly ruled that the jail calls were relevant and not prejudicial, agreeing with the State's position that evidence of Johnson's bail, plea negotiations, and DOC parole status were required to be proven by the State in its case in chief. The trial court did allow counsel to inquire into this issue during Lingle's cross-examination. Johnson fails to show how he was prejudiced.

As to the portion of a jail call mistakenly played to the jury by the State, the State concedes that this jail call was mistakenly presented to the jury on the second day of trial, and the trial court immediately gave the jury a curative instruction to disregard the evidence. Specifically, the trial court instructed the jury,

> So, I'm advising and telling the jury at this time, the phone call that you have heard this morning, you are to totally to disregard, and not to consider this as being admitted evidence.

II VRP at 169.

17

We assume that the jury follows the instructions given to it. *Emery*, 174 Wn.2d at 766. Thus, even if counsel was deficient, the trial court's curative instruction obviated any prejudice because the court had instructed the jury to disregard the portion of the jail call mistakenly played on the second day of trial. Thus, we hold that Johnson's ineffective assistance of counsel claim fails.

D.  MOTION FOR MISTRIAL

Johnson also argues that he received ineffective assistance of counsel when his defense counsel failed to move for a mistrial after the jury heard the irrelevant and prejudicial portion of a jail call. We disagree.

Johnson provides no argument as to why defense counsel's conduct constituted error or how it prejudiced him in light of the court's curative instruction to disregard the mistakenly played portion of the jail call. Even if Johnson's counsel had requested a mistrial, Johnson fails to show that the trial court would have granted the motion or that it would have been an abuse of discretion for the court to deny the motion. Thus, Johnson fails to prove that requesting a mistrial would have resulted in a different outcome at trial. Therefore, Johnson's claim of ineffective assistance of counsel fails.

E.  OFF THE RECORD CONVERSATIONS

Johnson also argues that he received ineffective assistance of counsel when his counsel failed to memorialize 18 off the record conversations on the record. We disagree.

As discussed above, the record is insufficient to determine whether there was a courtroom closure. Without evidence of the subject matter of these conversations, we cannot determine whether these conversations in fact amounted to a closure of the courtroom. Thus, we are unable

18

to determine whether Johnson's right to a public trial was implicated or violated. "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because he cannot show that his public trial right was violated, his claim of ineffective assistance of counsel on this basis fails.

V. LFOs

Johnson argues that the trial court erred when it imposed discretionary LFOs without holding an individualized hearing to determine whether he had the ability to pay, citing RCW 10.01.160 and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). He improperly claims that all of the LFOs ordered were discretionary.

Under *Blazina*, the trial court must make an individualized inquiry into the defendant's current and future ability to pay discretionary LFOs. 182 Wn.2d at 839. However, a trial court has no discretion on whether to impose mandatory LFOs under RCW 10.01.160(3). *State v. Seward*, 196 Wn. App. 579, 587, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015 (2017).

Here, the sentencing court imposed the following mandatory LFOs: a $500 victim assessment fee pursuant to former RCW 7.68.035 (2015), a $200 criminal filing fee pursuant to former RCW 10.01.160 (2015), and a $100 DNA collection fee pursuant to former RCW 43.43.7541 (2015). The only discretionary legal financial obligation imposed on Johnson was a $250 jury demand fee. *See State v. Lundy*, 176 Wn. App. 96, 107, 308 P.3d 755 (2013). The sentencing court did not make an individualized inquiry into Johnson's current or future ability to pay the $250 jury demand fee. Therefore, we reverse the jury demand fee from the judgment and

sentence, and we remand for the sentencing court to conduct an adequate individualized inquiry under *Blazina* prior to imposing discretionary LFOs.

## VI. LESSER INCLUDED OFFENSE

### A. LEGAL PRINCIPLES

Johnson argues that the trial court erred by refusing to instruct the jury on the lesser included offense of fourth degree assault. Specifically, Johnson argues that because all elements of the lesser offense are necessarily included in the charged offense of violation of an NCO, the trial court should have instructed the jury on fourth degree assault. We disagree because the evidence did not support that a lesser included instruction should have been given.

Under the test in *State v. Workman*, a defendant is entitled to an instruction on a lesser included offense if: (1) each element of the lesser offense is necessarily included in the charged offense and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime. 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Under the first prong of the *Workman* test, a court asks whether the lesser included offense consists only of elements that are necessary to a conviction for the greater, charged offense. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). Under the second prong, "the court asks whether the evidence presented in the case supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense." *Condon*, 182 Wn.2d at 316. When the answer to both questions is yes, the requesting party is entitled to the lesser included offense instruction. *Condon*, 182 Wn.2d at 316.

When determining if the evidence at trial was sufficient to support the giving of a lesser included offense instruction, we view the supporting evidence in the light most favorable to the

party that requested the instruction. *State v. Fernandez-Medina,* 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

B.  FOURTH DEGREE ASSAULT

The jury found Johnson guilty of felony violation of an NCO by assault. RCW 26.50.110(4) states that any assault in violation of an order issued under chapter 10.99 or 26.50 RCW that does not amount to first or second degree assault is a class C felony. "A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1).

Johnson meets the first prong of the *Workman* test because the elements of fourth degree assault are necessarily included in the charge of violation of an NCO by assault. *Workman*, 90 Wn.2d at 447-48. In order to succeed on the second prong, Johnson is required to identify evidence in the record that shows he committed only fourth degree assault and not felony violation of an NCO by assault. *Workman*, 90 Wn.2d at, 447-48. Johnson does not, nor can he, make this showing. Thus, we hold that the trial court did not err in failing to instruct the jury on the lesser included offense of fourth degree assault.

SAG

Johnson claims that his right to a speedy trial[7] was violated because "[t]he 'original' trial dates I was scheduled at the same time as a murder trial. The second trial date was pushed back

---

[7]Although Johnson characterizes the argument as a speedy trial issue, his actual claim concerns a time for trial violation, which is not a constitutional issue. *See State v. Iniguez,* 167 Wn.2d 273, 287, 217 P.3d 768 (2009).

due to the arresting officer[s] being unreachable due to being out on a hunting trip." SAG at 1. We disagree and hold that Johnson waived his time for trial claim.

CrR 3.3 provides that a defendant detained in jail shall be brought to trial within 60 days of his arraignment. CrR 3.3(b)(1)(i), (c)(1). The purpose of this rule is to protect a defendant's constitutional right to a speedy trial and to prevent undue and oppressive incarceration before trial. *State v. Kingen,* 39 Wn. App. 124, 127, 692 P.2d 215 (1984). Nevertheless, "[t]he constitutional right to a speedy trial does not mandate trial within 60 days." *State v. Torres,* 111 Wn. App. 323, 330, 44 P.3d 903 (2002). CrR 3.3(f)(2) permits the trial court to continue the trial past 60 days when necessary in the "administration of justice and the defendant will not be prejudiced in the presentation of his or her defense."

The decision to grant a continuance under CrR 3.3 rests within the sound discretion of the trial court, and it will not be disturbed unless the trial court abuses its discretion. *State v. Nguyen,* 131 Wn. App. 815, 819, 129 P.3d 821 (2006). A trial court may grant a continuance to allow defense counsel more time to prepare for trial, even over the defendant's objection, to ensure effective representation and a fair trial. *State v. Flinn,* 154 Wn.2d 193, 200, 110 P.3d 748 (2005); *State v. Campbell,* 103 Wn.2d 1, 14-15, 691 P.2d 929 (1984). Continuances are excluded from time for trial calculations. CrR 3.3(e)(3). If a period is excluded, the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period. CrR 3.3(b)(5).

Here, the record on appeal includes a transcript from one continuance hearing, but it does not include all of the hearings addressing defense counsel's continuance motions or the orders related to continuances. Thus, because these issues rely on matters outside the record on appeal, we cannot consider them in this direct appeal. *McFarland*, 127 Wn.2d at 335. They are more

properly raised in a personal restraint petition. *McFarland*, 127 Wn.2d at 335. Therefore, this claim fails and we affirm.

We affirm Johnson's convictions. However, we reverse the jury demand fee from the judgment and sentence and remand for the sentencing court to conduct an adequate individualized inquiry under *Blazina* prior to imposing discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.